1  XAVIER BECERRA
   Attorney General of California
2  BENJAMIN M. GLICKMAN, SBN 247907
   Supervising Deputy Attorney General
3  ANTHONY O'BRIEN, SBN 232650
   NATASHA SAGGAR SHETH, SBN 282896
4  GABRIELLE D. BOUTIN
   Deputy Attorneys General
5  State Bar No. 267308
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone:  (916) 210-6053
    Fax:  (916) 324-8835
8   E-mail:  Gabrielle.Boutin@doj.ca.gov
   *Attorneys for California Department of Water*
9  *Resources and its Director, Karla Nemeth, in her*
   *official capacity; the California Department of*
10 *Finance and its Director, Keely Bosler, in her*
   *official capacity; California State Controller Betty*
11 *Yee, in her official capacity; and California State*
   *Treasurer Fiona Ma, in her official capacity*

12

13                IN THE UNITED STATES DISTRICT COURT

14            FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16

| 17 | **ALEX CANNARA, an individual; GENE A. NELSON, an individual,** | 3:19-cv-04171-EMC |
|----|----|----|
| 18 | | |
| 19 | Plaintiffs, | |
| 20 | v. | **DEFENDANT STATE AGENCIES' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 21 | **CALIFORNIA DEPARTMENT OF WATER RESOURCES DIRECTOR KARLA NEMETH, et al.,** | |
| 22 | | Date:        November 7, 2019 |
| 23 | Defendants. | Time:        1:30 p.m. |
| | | Dept:        Courtroom 5 |
| 24 | | Judge:       The Honorable Edward M. Chen |
| 25 | | Trial Date:  None Set |
| | | Action Filed:  7/19/2019 |

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

    I.     AB 1054 ............................................................................................................. 2

    II.    Allegations in the Complaint ................................................................... 5

LEGAL STANDARDS FOR MOTION TO DISMISS ........................................................ 6

    I.     Federal Rule of Civil Procedure 12(b)(1) ........................................... 6

    II.    Federal Rule of Civil Procedure 12(b)(6) ........................................... 7

ARGUMENT ............................................................................................................. 7

    I.     This Case is Not Justiciable ....................................................................... 7

         A.    Defendants' Eleventh Amendment Immunity Bars Plaintiffs' Claims ................................................................................................ 7

         B.    Plaintiffs Lack Standing to Support Any Claims ............................... 9

              1.    Plaintiffs Have Failed to Allege Any Particularized Injury ......... 10

              2.    Plaintiffs Injuries Are Not Actual or Imminent or Fairly Traceable to AB 1054 ............................................................... 11

         C.    Plaintiffs' Constitutional Claims Are Unripe ................................. 12

         D.    Even If All Article III Requirements Were Met, Plaintiffs' Claims Would Be Barred by the Johnson Act ........................................... 13

    II.    Plaintiffs Fail to State Any Claims for Relief ....................................... 15

         A.    Plaintiffs' First Claim for Violation of Due Process Fails to State a Claim Under Either the U.S. or California Constitutions ....................... 15

              1.    The Evidentiary Burden in PUC Catastrophic Wildfire Proceedings Does Not Violate Due Process Under the U.S. Constitution ............................................................................. 16

              2.    The Evidentiary Burden in PUC Catastrophic Wildfire Proceedings Does Not Violate Due Process Under the California Constitution ......................................................... 18

              3.    AB 1054 Expressly Requires the PUC to Assess the Reasonableness of a Proposed Surcharge and Therefore Does Not Violate the Due Process Clause of the U.S. or California Constitutions ................................................... 19

         B.    Plaintiffs' Second Claim for Violation of the Takings Clause Fails to State a Claim ................................................................................. 19

         C.    Plaintiffs' Third Claim for Violation of the Urgency Clause of the California Constitution Fails to State a Claim ................................ 21

i

**TABLE OF CONTENTS**
(continued)

Page

1. AB 1054 Includes the Legislature's Constitutionally Sufficient Statement of Facts Concerning the Necessity of the Bill .................................................................................... 21

2. AB 1054 Did Not Create Any "Offices" ..................................... 22

D. Plaintiffs' Fourth Claim for Violation of the "Right to Access Information" Under the California Constitution Fails to State a Claim .................................................................................... 23

E. Plaintiffs' Fifth Claim Alleging an "Unlawful Gift of Public Funds" Under the California Constitution Fails to State a Claim ......................... 23

F. Plaintiffs' Sixth Claim for Declaratory Relief Fails to State a Claim ....... 24

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbott Labs. v. Gardner*
    387 U.S. 136 (1967) .................................................................................................12

*Am. States Ins. Co. v. Kearns*
    15 F.3d 142 (9th Cir. 1994) .....................................................................................25

*Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*
    696 F. Supp. 2d 396 (S.D.N.Y. 2010) ....................................................................14

*Amwest Surety Ins. Co. v. Wilson*
    11 Cal. 4th 1243 (1995) ..........................................................................................21

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................................7

*Ashcroft v. Mattis*
    431 U.S. 171 (1977) .................................................................................................25

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
    149 F.3d 971 (9th Cir. 1998) ..............................................................................16, 17

*Brillhart v. Excess Ins. Co. of America*
    316 U.S. 491 (1952) .................................................................................................25

*Brooks v. Sulphur Springs Valley Elec. Co-op*
    951 F.2d 1050 (9th Cir. 1991) ..........................................................................13, 14, 15

*Cal. Hous. Fin. Agency v. Elliott*
    17 Cal. 3d 575 (1976) ..............................................................................................23

*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010) ...................................................................................7

*Citizens Oversight, Inc. v. Cal. Pub. Util. Comm'n*
    No. 14-cv-02703-CAB-NLS, 2015 WL 13649247 (S.D. Cal. Apr. 16, 2015) .................14, 15

*City of Los Angeles v. David*
    538 U.S. 715 (2003) ............................................................................................17, 18

*Clapper v. Amnesty Int'l. USA*
    568 U.S. 398 (2013) .................................................................................................11

*Coal. to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012) .................................................................................8, 9

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*County of Alameda v. Carleson*
   5 Cal. 3d 730 (1971) ...........................................................................................23, 24

4

*DaimlerChrysler Corp. v. Cuno*
   547 U.S. 332 (2006) ...................................................................................................10

5

6

*Davis v. Los Angeles County*
   12 Cal. 2d 412 (1938) ...........................................................................................21, 22

7

8

*Duquesne Light Co. v. Barasch*
   488 U.S. 299 (1989) ...................................................................................................20

9

*Frew ex rel. Frew v. Hawkins*
   540 U.S. 431 (2004) .....................................................................................................9

10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
   528 U.S. 167 (2000) .........................................................................................10, 11, 12

11

12

*Gov't Emps. Ins. Co. v. Dizol*
   133 F.3d 1220 (9th Cir. 1998) ...................................................................................25

13

14

*Hollingsworth v. Perry*
   570 U.S. 693 (2013) ...................................................................................................10

15

16

*In re Coleman*
   560 F.3d 1000 (9th Cir. 2009) ...................................................................................12

17

18

*In re Livingston*
   10 Cal. 2d 730 (1938) ...........................................................................................21, 22

19

*James-Dickinson Farm Mortg. Co. v. Harry*
   273 U.S. 119 (1927) ...................................................................................................17

20

21

*Johnson v. Riverside Healthcare Sys., LP*
   534 F.3d 1116 (9th Cir. 2008) .....................................................................................7

22

23

*Johnson v. Weinberger*
   851 F.2d 233 (9th Cir. 1988) .....................................................................................10

24

*Lazy Y Ranch Ltd. v. Behrens*
   546 F.3d 580 (9th Cir. 2008) .......................................................................................7

25

26

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) .............................................................................................10, 12

27

28

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*N. Star Int'l v. Ariz. Corp. Comm'n*
  720 F.2d 578 (9th Cir. 1983)....................................................................................7

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*
  228 F.3d 1043 (9th Cir. 2000)..................................................................................16

*Nunez v. City of Los Angeles*
  147 F.3d 867 (9th Cir. 1998)....................................................................................16

*Oberholzer v. Comm'n on Judicial Performance*
  20 Cal. 4th 371 (1999) .............................................................................................18

*Palomar Pomerado Health Sys. v. Belshe*
  180 F.3d 1104 (9th Cir. 1999)....................................................................................8

*Pennell v. City of San Jose*
  485 U.S. 1 (1988) .....................................................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984) .................................................................................................8, 9

*Peoples Nat'l Util. Co. v. City of Houston*
  837 F.2d 1366 (5th Cir. 1988)..................................................................................14

*Porter v. Gore*
  354 F. Supp. 3d 1162 (S.D. Cal. 2018) .....................................................................8

*Portman v. County of Santa Clara*
  995 F.2d 898 (9th Cir. 1993)....................................................................................12

*Principal Life Ins. Co. v. Robinson*
  394 F.3d 665 (9th Cir. 2005)....................................................................................25

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*
  344 U.S. 237 (1952) .................................................................................................25

*Ryan v. Cal. Interscholastic Fed'n-San Diego Section*
  94 Cal.App.4th 1048 (2001).....................................................................................18

*San Remo Hotel L.P. v. City & County of San Francisco*
  27 Cal. 4th 643 (2002) .............................................................................................20

*Schmier v. U.S. Court of Appeals for Ninth Circuit*
  279 F.3d 817 (9th Cir. 2002).....................................................................................11

v

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Schneider v. Cal. Dep't of Corr.*
   151 F.3d 1194 (9th Cir. 1998)..................................................................20

*Sierra Club v. Watt*
   608 F. Supp. 305 (E.D. Cal. 1985)...........................................................12

*Simmonds v I.N.S.*
   326 F.3d 351 (2d Cir. 2003)......................................................................13

*Spokeo, Inc. v. Robins*
   136 S. Ct. 1540 (2016) ..............................................................................10

*Stanislaus Food Prods. Co. v. Pub. Utils. Comm'n*
   560 F. Supp. 114 (N.D. Cal. 1982) ..........................................................14

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009) ..................................................................................10

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) (en banc)..................................................13

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*
   594 F.2d 730 (9th Cir. 1979)......................................................................7

*Town of Castle Rock, Colo. v. Gonzales*
   545 U.S. 748 (2005) ..................................................................................16

*U.S. West, Inc. v. Nelson*
   146 F.3d 718 (9th Cir. 1998)....................................................................15

*United States v. Salerno*
   481 U.S. 739 (1987) ..............................................................................7, 16

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
   454 U.S. 464 (1982) ....................................................................................9

*Warth v. Seldin*
   422 U.S. 490 (1975) ..................................................................................10

*Wash. State Grange v. Wash. State Republican Party*
   552 U.S. 442 (2008) ..............................................................................7, 13

*Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*
   276 F. Supp. 2d 1046 (E.D. Cal. 2003) ...................................................25

# TABLE OF AUTHORITIES
### (continued)

**Page**

*White v. State*
    88 Cal. App. 4th 298 (2001)..................................................................................23, 24

*Wiese v. Becerra*
    306 F. Supp. 3d 1190 (E.D. Cal. 2018)..................................................................20

*Ex Parte Young*
    209 U.S. 123 (1908).............................................................................................8, 9

**STATUTES**

28 United States Code
    § 1342..................................................................................................................13, 14
    § 1342(1)....................................................................................................................15
    § 1342(2)....................................................................................................................15
    § 1342(3)....................................................................................................................15
    § 2201(a)....................................................................................................................25

Government Code § 8899.72 ...........................................................................................22

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

Public Utilities Code

§ 326.1 ...................................................................................................................3, 22, 23

§ 326.1(f) ...........................................................................................................................23

§ 326.1(f)(1) ........................................................................................................................6

§ 326.2 .................................................................................................................................3

§ 451.1 ..........................................................................................................................16, 17

§ 451.1(b) .............................................................................................................................4

§ 451.1(b)-(c) ..................................................................................................................5, 17

§ 451.1(c) ........................................................................................................................3, 5

§ 854.2(a)(6) .........................................................................................................2, 3, 22, 24

§ 1701.1(d)(4) ......................................................................................................................4

§ 1701.8(b) ........................................................................................................................15

§ 1701.8(b)(1)(B) .................................................................................................................4

§ 1756(a) ...........................................................................................................................15

§ 3280(i) ...............................................................................................................................4

§ 3280(a) ............................................................................................................................22

§ 3280(b) ..............................................................................................................................4

§ 3285 ...................................................................................................................................4

§ 3288(b) ...........................................................................................................................24

§ 3289 ...................................................................................................................4, 15, 19, 24

§ 3289(a)(1) .......................................................................................................................15

§ 3292 ...................................................................................................................................4

§ 3292(a) ..............................................................................................................................4

§ 3292(b) ..............................................................................................................................4

§ 3292(b)(3) .........................................................................................................................4

§ 3292(c) ..............................................................................................................................4

§ 3292(f)(1) ..........................................................................................................................4

§ 3292(h) ..............................................................................................................................5

§ 8389 ...................................................................................................................................5

§ 8389(b) ..............................................................................................................................3

§ 8389(c)-(d) .........................................................................................................................3

§ 8389(e) ..............................................................................................................................3

Water Code

§ 80524(b) ............................................................................................................................4

§ 80540(d) ............................................................................................................................4

§ 80550 .................................................................................................................................4

§ 800550 .............................................................................................................................24

# TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

California Constitution
Article I, § 3 ................................................................................................23
Article I, § 19 ..............................................................................................20
Article IV .......................................................................................................5
Article IV, § 8 .........................................................................................21, 22
Article IV, § 8, subd. (d) .........................................................................21, 22
Article XVI, § 6.......................................................................................23, 24

United States Constitution
Amendment V ..............................................................................................20
Article III ............................................................................................. *passim*

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) .........................................................................................1, 6, 7
Rule 12(b)(6) ..............................................................................................1, 7

**OTHER AUTHORITIES**

Assembly Bill 111 ............................................................................................3

Assembly Bill 1054 ............................................................................... *passim*

California Code of Regulations § 1.4 .........................................................15, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on November 7, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, Defendants California Department of Water Resources and its Director, Karla Nemeth, in her official capacity; the California Department of Finance and its Director, Keely Bosler, in her official capacity; California State Controller Betty Yee, in her official capacity; and California State Treasurer Fiona Ma, in her official capacity, will and hereby do move this Court to dismiss the Complaint and all claims therein, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion to dismiss is made on the grounds that this Court lacks subject matter jurisdiction and that Plaintiff fails to state a claim upon which relief can be granted.  This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the papers and pleadings on file, and upon such matters that may be submitted at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In the summer of 2019, the state of California faced an immediate threat to communities and properties throughout the state from increased risk of catastrophic utility-related wildfires. The electrical utilities' resulting exposure to financial liability from wildfires caused by utility equipment also increased costs for ratepayers and resulted in unprecedented instability for the utilities. The state's largest electrical utility filed for Chapter 11 bankruptcy protection and others faced credit ratings downgrades to near junk bond status.  This instability jeopardized the ability of the state's electric utilities to provide California residents and businesses with safe, reliable and affordable electric and gas service, to reduce the risk of future catastrophes, to meet the state's mandates to reduce carbon emissions, and to address the risks of climate change.

In response to the immediate threat posed by utility-caused catastrophic wildfires, the California Legislature took action to stabilize the situation by enacting Assembly Bill (AB) 1054 as an urgency measure.  Along with detailed provisions to lower the risk of utility-caused

1

1    wildfires, AB 1054 created the Wildfire Fund (Fund) to pay the claims of wildfire victims.  It is

2    funded, in part, by up to $10.5 billion in initial and annual contributions from electrical utility

3    shareholders.  The purpose of the Fund is to protect Californians by ensuring that utility

4    companies that are safe actors will have the financial means to provide essential services at

5    reasonable rates and to reduce costs to ratepayers by paying for liabilities that otherwise would be

6    recovered in rate increases.

7         The Complaint in this case seeks to invalidate the entirety of AB 1054 on its face based

8    solely on Plaintiffs' speculative concerns and disagreement with the wisdom of the California

9    Legislature's policy choices.  Plaintiffs' claims are non-justiciable and lack merit.  Although

10   Plaintiffs purport to name state officials as defendants, the claims are, in fact, against the state

11   itself and therefore barred by the state's Eleventh Amendment sovereign immunity.  Plaintiffs'

12   claims also lack the fundamental Article III requirements of standing and ripeness and are barred

13   by the federal Johnson Act.  Even if this Court had jurisdiction, Plaintiffs have failed to state any

14   claim for relief.  For these reasons, explained further below, this Court should dismiss the

15   Complaint without leave to amend.

16                                                    **BACKGROUND**

17   **I.      AB 1054**

18        The California Legislature enacted AB 1054 in response to the "immediate threat to

19   communities and properties throughout the state" posed by "increased risk of catastrophic

20   wildfires" and the resulting increased financial liabilities of electric companies, and increased

21   costs to their ratepayers.  Assem. Bill 1054, 2019-2020 Reg. Sess. (Cal. 2019) (AB 1054)

22   § 1(a)(1), (2).  The Legislature also recognized in AB 1054 that liabilities arising from

23   catastrophic wildfires had placed the state's electric industry in an "unprecedented state of

24   instability," with one utility in bankruptcy and the credit ratings of all others at, or at risk of, junk

25   bond status.  Pub. Util. Code § 854.2(a)(6).[1]  This jeopardized the electric companies' abilities to

26   "to provide safe and reliable electric and gas service, to reduce the risk of future catastrophes, to

27   provide service at just and reasonable rates, to meet the state's mandates to reduce carbon

28   _____

     [1] All citations to the Public Utility Code and Water Code refer to the California codes.

1   emissions, and to address the risks of climate change." *Id.*

2       AB 1054 sought to address the immediate public safety and market stability risks posed by

3   utility-caused catastrophic wildfires by including numerous provisions to reduce utility wildfire

4   risk.  For example, AB 1054 establishes the California Wildfire Safety Advisory Board (Advisory

5   Board) consisting of seven appointed members to "ensure that broad expertise is available to

6   develop best practices for wildfire reduction."[2] *Id.* § 326.1; AB 1054 § 2(e).  Among other

7   responsibilities, the Advisory Board will make recommendations to the newly created Wildfire

8   Safety Division regarding wildfire safety and standards for electric utilities' mandatory wildfire

9   mitigation plans.  Pub. Util. Code §§ 326.2, 8389(b).  Thereafter, the Division will consult with

10  the California Public Utilities Commission (PUC), which will adopt new requirements for

11  utility's wildfire mitigation plans and a wildfire mitigation compliance process.  *Id.* § 8389(c)-(d).

12      AB 1054 also creates incentives for electric utilities to make the safety investments

13  identified in their wildfire mitigation plans and meet enumerated safety and corporate governance

14  standards.  Specifically, an electric utility that receives PUC approval of its wildfire mitigation

15  plan, meets specified corporate governance requirements, including adopting an executive

16  incentive compensation structure tied to safety performance metrics, and is in good standing with

17  any pending "safety culture" proceeding at the PUC, will be eligible to receive a safety

18  certification from the PUC.  *Id.* § 8389(e).  As discussed in more detail below, only electric

19  utilities that obtain this safety certification will receive the evidentiary presumption in any

20  catastrophic wildfire proceeding before the PUC.  Pub. Util. Code §451.1(c).

21      The Fund created by AB 1054 is designed to "reduce the costs to ratepayers in addressing

22  utility-caused catastrophic wildfires" and to "support[] the creditworthiness of electrical

23  corporations, and provide[] a mechanism to attract capital for investment in safe, clean, and

24  reliable power for California at a reasonable cost to ratepayers." *Id.* § 1(a)(3), (4).  The Fund will

25  be used to pay the settled or finally adjudicated claims of the victims of utility-caused wildfires.

26  _____

27      [2] On the same day that the Legislature enacted AB 1054, it also enacted through regular,
    non-urgency procedures, AB 111. *See* Energy Infrastructure Safety Act, Assem. Bill 111, 2019-
    2020 Reg. Sess. (Cal. 2019) (AB 111).  AB 111 modified certain provisions of AB 1054.  This

28  included the repeal and recreation of the Advisory Board.  AB 111, §§ 8, 10.

3

1   Pub. Util. Code § 3292(f)(1).

2       The Fund will be capitalized through several different mechanisms.  These include:

3   - Mandatory initial and annual contributions from each participating electric utility's

4       shareholders amounting to each utility's proportionate share of $10.5 billion;

5   - A loan from the state's Surplus Money Investment Fund (SMIF);

6   - Revenue generated from a ratepayer charge (if any) approved by PUC; and/or,

7   - Proceeds from bonds that may be issued by the Department of Water Resources (DWR),

8       to be repaid by revenue generated by the ratepayer charge.[3]

9   *Id.* § 3280(b), (i), 3285; Water Code § 80550.  With respect to the ratepayer charge, AB 1054

10  directs the PUC to initiate rulemaking procedures to consider imposing a just and reasonable

11  ratepayer charge to support the Fund.[4]  Pub. Util. Code § 3289.

12      AB 1054 includes express conditions that each electric utility must meet for its wildfire

13  damage claims to be paid by the Fund.  *Id.* § 3292.  Within 15 days of AB 1054's enactment, the

14  electric utility was required to make an election to participate in the Fund along with a

15  commitment to make required initial and annual contributions to the Fund, which may not be

16  recovered from ratepayers.  *Id.* § 3292(a).  Initial contributions, in the amount of each utility's

17  share of $7.5 billion, must be delivered to the Fund within 60 days of AB 1054's enactment.  *Id.*

18  § 3280(i), 3292(b)(3).  A utility is ineligible to participate in the fund if it is subject to any

19  unresolved insolvency proceedings.  *Id.* § 3292(b), (c).

20      An electric utility that meets the requirements to join the Fund may seek payment from the

21  Fund for eligible wildfire claims that are approved by the Wildlife Fund Administrator.

22  *Id.* § 3292(f)(1).  The utility must then file an application with the PUC initiating a "catastrophic

23  wildfire proceeding" to determine whether its costs and expenses for the wildfire are "just and

24  reasonable" or whether they are "disallowed."  *Id.* §§ 451.1(b), 1701.1(d)(4), 1701.8(b)(1)(B).  In

25  those proceedings, "an electrical corporation bears the burden to demonstrate, based on a

26

27  [3] Bonds will issue only in the event that PUC decides to impose the rate charge.  *See* Water Code §§ 80524(b), 80540(d).

28  [4] The PUC issued its proposed decision on the charge on September 24, 2019, and is scheduled to issue the final Commission decision on October 24, 2019.

4

1  preponderance of the evidence, that its conduct was reasonable[,]" as defined by statute.  *Id.*

2  § 451.1(b)-(c).  But where an electric utility has a valid safety certification under the terms set

3  forth in Public Utilities Code section 8389, its conduct is deemed reasonable, unless an interested

4  party "creates a serious doubt as to the reasonableness of the [utility's] conduct," in which case

5  the burden shifts back to the utility to prove it acted reasonably.  *Id.* § 451.1(c).

6         For all costs that the PUC determines to be reasonable, the electric utility need not pay

7  those amounts back to the Fund.  *See id.* § 3292(h).  For all costs that the PUC disallows the

8  electric utility must reimburse the Fund either the disallowed amounts or an amount determined

9  by a specified formula, whichever is less, and may not recover those costs from ratepayers.  *Id.*

10  Thus, the *only* instance in which ratepayers would be exposed to rate increases would be if the

11  Fund has run out of money and is unable to cover costs that the PUC deems just and reasonable

12  following a catastrophic wildfire proceeding.  This process reduces "the costs to ratepayers in

13  addressing utility-caused wildfires."  AB 1054 § 1(a)(1), (2).

14         The Legislature enacted AB 1054 as an urgency bill "necessary for the immediate

15  preservation of the public peace, health, or safety within the meaning of Article IV of the

16  California Constitution."  AB 1054 § 27.  As the bill expressly states, the urgency arose from the

17  immediate need to "address wildfire safety and wildfire liability of electrical utilities and ensure

18  that the claims of wildfire victims may be paid expeditiously."  *Id.*

19  **II.    ALLEGATIONS IN THE COMPLAINT**

20         Plaintiffs Alex Cannara and Gene A. Nelson are individuals who reside in Northern

21  California and are electric and gas customers of PG&E.  Compl., ECF No. 1, ¶¶ 14-16.

22         The Complaint names as Defendants state officials and agencies, including moving

23  Defendants California Department of Water Resources and its Director Karla Nemeth, California

24  Department of Finance and its Director Keely Bosler, California State Controller Betty Yee, and

25  California State Treasurer Fiona Ma.  *Id.* ¶ 17.  The individual Defendants are each sued in their

26  official capacities.  *Id.* ¶ 18.  Plaintiffs allege generally that each Defendant is "charged with

27  implementing the urgency measure at issue in this suit."  *Id.* ¶ 19.

28         The Complaint is a facial constitutional challenge to AB 1054 and includes six claims for

relief, three of which arise under California law.  In the first claim, Plaintiffs allege that AB 1054 violates due process under the U.S. and California Constitutions in two ways:  1) by placing the evidentiary burden on ratepayers in PUC catastrophic wildfire proceedings to show that the utility acted unreasonably in causing the wildfire; and 2) by failing to provide a forum to challenge the potential new PUC rate charge that would to support the Fund.  *See id.* at pp. 39-42.

In the second claim, Plaintiffs allege that AB 1054 violates the Takings Clauses of the U.S. and California Constitutions because placing the burden on ratepayers in PUC catastrophic wildfire proceedings may result in unjust and unreasonable utility charges.  *See id.* at pp. 42-45.

In the third claim, Plaintiffs allege that AB 1054 is invalid because its enactment by the Legislature violated requirements in the California Constitution for urgency measures.  *Id.* at 45.  Specifically, Plaintiffs allege that AB 1054 makes insufficient factual findings of the bill's necessity and improperly created public "offices."  *See id.* at pp. 45-48.

In their fourth claim, Plaintiffs allege that a provision of AB 1054, Pub. Util. Code § 326.1(f)(1), violates Plaintiffs' right to access of information under the California Constitution.  *Id.* at pp. 49-50.

In their fifth claim, Plaintiffs allege that AB 1054 violates the California Constitution's bar on unlawful gifts of public funds by providing state money to the Fund.  *Id.* at pp. 50-51.

In their sixth claim, Plaintiffs seek a judicial declaration that "AB 1054 is invalid as violative of the U.S. and California Constitutions."[5]  *Id.* at 52.

For relief, Plaintiffs pray for the declaration in the sixth claim, as well as an injunction prohibiting Defendants from "enforcing or implementing any provisions of AB 1054."  *Id.*

## LEGAL STANDARDS FOR MOTION TO DISMISS

### I.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to raise the defense that the court lacks "jurisdiction over the subject matter" of a claim.  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a

---

[5] Only two of the substantive claims (in addition to the sixth claim for declaratory relief) arise from federal law.  Because those claims clearly fail, if this Court has any doubts about the merits of Plaintiffs' state law claims, it should remand the case to state court.

1   'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g*

2   *Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979) (citations omitted).  This Rule

3   12(b)(1) motion attacks the allegations of the complaint.  In such cases, and similar to the

4   standards applicable to Rule 12(b)(6) motions, the district court must accept the allegations of the

5   complaint as true.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir.

6   2010).  However, where a Rule 12(b)(1) motion is brought, the "party asserting federal subject

7   matter jurisdiction bears the burden of proving its existence."  *Id.* at 1122.

8   **II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

9           A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *N.*

10  *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a motion to

11  dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its

12  face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

13          "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the

14  absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside*

15  *Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted).  The court

16  accepts as true all material allegations in the complaint and construes them in the light most

17  favorable to the plaintiff.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

18          In a facial constitutional challenge to legislation, the plaintiff "must establish that no set of

19  circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S.

20  739, 745 (1987).  This is a "heavy burden."  *Id.*  A plaintiff cannot prevail simply by suggesting

21  that constitutional problems may arise as to a particular application of the statute.  *See Wash.*

22  *State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Rather, he or she must

23  show that the statute is unconstitutional in all of its applications.  *Id.*

**ARGUMENT**

25  **I.    THIS CASE IS NOT JUSTICIABLE**

26          **A.    Defendants' Eleventh Amendment Immunity Bars Plaintiffs' Claims**

27          Each of Plaintiffs' claims are barred by Defendants' Eleventh Amendment sovereign

28  immunity.  The Eleventh Amendment prohibits federal lawsuits by private parties against a state

7

1   or a state agency, unless the state has consented to the suit or Congress has abrogated Eleventh

2   Amendment immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100

3   (1984).  "[T]he principle of sovereign immunity is a constitutional limitation on the federal

4   judicial power established in Art. III."  *Id.* at 98.  Plaintiffs have not alleged that California has

5   consented to this suit, or that Congress has abrogated the state's Eleventh Amendment immunity.

6   Nor could they in good faith.  *See id.* (consent must be "unequivocally expressed").

7          A suit against a state official is likewise barred under the Eleventh Amendment when the

8   state itself is the "real, substantial party in interest."  *Id.* at 101.  The "general rule is that relief

9   sought nominally against an officer is in fact against the sovereign if the decree would operate

10  against the latter."  *Id.*  A decree would operate against the state "if 'the judgment sought would

11  expend itself on the public treasury or domain, or interfere with the public administration,' or if

12  the effect of the judgment would be 'to restrain the Government from acting, or to compel it to

13  act.'"  *Id.* at 101 n.11 (*quoting Dugan v. Rank*, 372 U.S. 609, 620 (1963); *see also Palomar*

14  *Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (holding that claim for

15  injunction restraining official from reducing Medi-Cal payment rates was a claim against state, as

16  it sought to "interfere with the public administration"); *Porter v. Gore*, 354 F. Supp. 3d 1162,

17  1179-80 (S.D. Cal. 2018).

18         A narrow exception under *Ex Parte Young*, 209 U.S. 123 (1908), permits citizens to sue

19  state officers in their official capacities for prospective declaratory or injunctive relief for *the*

20  *officers'* alleged violations of federal law.  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

21  1128, 1133-34 (9th Cir. 2012).  The state official "must have some connection with the

22  enforcement of the act."  *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).  Such connection "must

23  be fairly direct; a generalized duty to enforce state law or general supervisory power over the

24  persons responsible for enforcing the challenged provision will not subject an official to suit."  *Id.*

25         Here, Plaintiffs' claims are barred by Eleventh Amendment immunity.  The agency

26  defendants—DWR and the California Department of Finance—unquestionably are entitled to

27  immunity.  *See Pennhurst*, 465 U.S. at 99-100.  And although Plaintiffs have nominally also

28  named as defendants state officials, the State of California is the real, substantial party in interest.

1    For relief, Plaintiffs seek a declaration that "AB 1054 is invalid as violative of the U.S. and

2    California Constitutions" and an injunction "enjoining Defendants from enforcing or

3    implementing *any* provisions of AB 1054." Compl., p. 52 (emphasis added). This requested

4    relief is not against the state officials. Rather, it would constitute a decree against the state itself;

5    it would interfere with the state's "public administration" of AB 1054 and "restrain" it from

6    implementing or enforcing *all* of the bill's provisions. *See Pennhurst*, 465 U.S. at 101 n.11.

7        The *Ex Parte Young* exception does not apply to Plaintiffs' claims for two reasons. First,

8    the doctrine does not apply to claims that a state official is violating *state* law. *Frew ex rel. Frew*

9    *v. Hawkins*, 540 U.S. 431, 439 (2004). Thus, the doctrine does not apply to Plaintiffs' third

10   through fifth claims, which arise from alleged violations of California law, or to Plaintiffs' Due

11   Process Clause and Takings Clause claims arising under the California Constitution. Second,

12   none of Plaintiffs' claims seek prospective relief against a state officer's direct violation of

13   federal law, as required under *Ex Parte Young*. Plaintiffs seek to enjoin AB 1054's general

14   operation, but do not ask the Court to compel or restrain any of the state official Defendants from

15   taking any particular action with respect to the law. And, the fact that Defendants have general

16   supervisory powers over the agencies overseeing implementation of AB 1054 does not constitute

17   the requisite "direct" enforcement authority. *Coal. to Defend Affirmative Action*, 674 F.3d at

18   1134.

19       All of Plaintiffs' claims are therefore barred by Eleventh Amendment sovereign immunity.

20       **B.    Plaintiffs Lack Standing to Support Any Claims**

21       Even if the state defendants were subject to suit (they are not), the Court should dismiss

22   Plaintiffs' claims for lack of Article III standing. Article III of the U.S. Constitution confines the

23   jurisdiction of federal courts "to the resolution of cases and controversies." *Valley Forge*

24   *Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982)

25   (internal quotation omitted). To establish a "case or controversy," as the "irreducible

26   constitutional minimum," a plaintiff must show that: "(1) it has suffered an injury in fact that is

27   (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

28   injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed

1   to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the*

2   *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lujan v.*

3   *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff "bears the burden of showing that

4   he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493

5   (2009).  Here, Plaintiffs do not meet these prerequisites.

6   **1.     Plaintiffs Have Failed to Allege Any Particularized Injury**

7        First, Plaintiffs do not allege that the enactment of AB 1054 has caused them any

8   "particularized" injury, as required to establish an injury-in-fact.  The particularized injury

9   requirement "serves vital interests going to the role of the Judiciary in our system of separated

10  powers." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).  "For an injury to be

11  'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v.*

12  *Robins*, 136 S. Ct. 1540, 1548 (2016).  In contrast, a "generalized grievance" is an injury "shared

13  in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490,

14  499 (1975).  A generalized grievance is not a particularized injury sufficient for Article III

15  standing. *Lujan*, 504 U.S. at 573-74.  Generalized grievances includes injuries to plaintiffs as

16  state taxpayers and as utility consumers. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344

17  (2006) (taxpayers); *see Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (citing

18  *Forelaws on Bd. v. Johnson*, 743 F.2d 677, 680 (9th Cir. 1984)) (utility consumers).

19       Plaintiffs do not allege any particularized injury; each of the harms alleged in the Complaint

20  is merely a generalized grievance based on Plaintiffs' status as California taxpayers and utility

21  consumers.  These include the alleged harms of:  (1) unjust and unreasonable utility rates that

22  may result from the evidentiary burden in PUC catastrophic wildfire proceedings; (2) the rate

23  charge that PUC may approve to capitalize the Fund; (3) the issuance of state bonds by DWR;

24  (4) the expenditure of state taxpayer funds to "pay for" the bonds; and, (5) harm to "the public's

25  right" to communications between the Advisory Board and the PUC.  None of these harms are

26  specific to Plaintiffs.  Although Plaintiffs allege they are consumers of a particular utility, PG&E,

27  there is no ratepayer dispute particular to PG&E.  Rather, Plaintiffs' concerns apply equally to all

28  electric utilities participating in the Fund.  Moreover, Plaintiffs have not alleged any facts

10

1  suggesting that any particularized injuries could be alleged in an amendment to the Complaint.

2  Indeed, as discussed below, one of Plaintiffs' central concerns—increased rates as a result of the

3  evidentiary burden in catastrophic wildfire proceedings—may never come to pass.

4       Because Plaintiffs have experienced no particularized injury as a result of Defendants'

5  conduct, they lack Article III standing.

6               **2.    Plaintiffs Injuries Are Not Actual or Imminent or Fairly Traceable to
                        AB 1054**

7

8       Plaintiffs also lack standing because their central alleged injuries are "conjectural [and]

9  hypothetical" rather than "actual or imminent." *See Friends of the Earth*, 528 U.S. at 180.

10  "[H]ypothetical, speculative or other possible future injuries" do not support standing. *Schmier v.*

11  *U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). "A threatened injury

12  must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l. USA*, 568

13  U.S. 398, 409 (2013) (emphasis in original). A "certainly impending" harm does not depend on a

14  speculative "chain of contingencies." *See id.* at 410.

15       The primary harm alleged in the Complaint—a hypothetical utility rate increase that may

16  result following application of the evidentiary burden in PUC catastrophic wildfire proceedings—

17  has not occurred and is not "certainly impending." The alleged harm relies on a highly

18  speculative and unlikely chain of contingencies including, at minimum, that: (1) Plaintiffs'

19  electric provider, PG&E, causes a wildfire; (2) the Fund runs out of money and therefore cannot

20  pay PG&E's wildfire costs; (3) PG&E initiates a catastrophic wildfire proceeding to request rate

21  increases to fund its unpaid liabilities from the fire; (4) PG&E has a safety certification and is

22  entitled to the evidentiary presumption; (5) no party to the proceeding is able to raise a serious

23  question as to PG&E's conduct to shift the burden back to the company; (6) the PUC finds that

24  PG&E's conduct was reasonable and approves the rate increase; and, (7) the PUC would not have

25  approved the rate increase if PG&E had retained the evidentiary burden (see causation discussion,

26  *infra*). Plaintiffs cannot show that this chain of events is certainly impending.

27       This alleged future harm also does not meet the causation requirement for Article III

28

11

1   standing, because it is not "fairly traceable" to AB 1054.[6]  *See Lujan*, 504 U.S. at 560.  Even if

2   Plaintiffs could show that an unreasonable rate increase by PG&E is certainly impending, they

3   cannot show that that alleged injury is "fairly traceable" to AB 1054, i.e., that "but for" AB 1054,

4   a rate increase would be less substantial or would not occur at all.  *See Sierra Club v. Watt*, 608 F.

5   Supp. 305, 316 (E.D. Cal. 1985) (citing *Scott v. Rosenberg*, 702 F.2d 1263, 1268 (9th Cir. 1983)).

6   They cannot do so because any future wildfire purportedly caused by PG&E is purely

7   hypothetical, and it is therefore unknown whether PG&E's wildfire-related conduct would meet

8   one legal standard of reasonableness, but not the other, or that the resulting rate changes would

9   differ.  Indeed, the very purpose of AB 1054 was to "reduce the costs to ratepayers in addressing

10   utility-caused catastrophic wildfires."  AB 1054 § 1.  To that end, AB 1054 includes numerous

11   provisions that make it likely that future approved rate increases (if any) will be fewer and

12   smaller.  These include the Fund itself, which provides a large new source of funding, as well as

13   new requirements for utilities' wildfire mitigation plans.  Plaintiffs' alleged harms are not actual,

14   certainly impending, or fairly traceable to AB 1054, and they therefore lack standing.

15   ### C.   Plaintiffs' Constitutional Claims Are Unripe

16   Plaintiffs' claims for violations of the Due Process Clause and Takings Clauses should also

17   be dismissed as unripe.  The ripeness doctrine is designed "to separate matters that are premature

18   for review because the injury is speculative and may never occur from those cases that are

19   appropriate for federal court action."  *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th

20   Cir. 1993) (quotation omitted).  "Where a dispute hangs on future contingencies that may or may

21   not occur, it may be too impermissibly speculative to present a justiciable controversy.  *In re*

22   *Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal quotation omitted). "[T]hrough avoidance

23   of premature adjudication," the ripeness doctrine prevents courts from becoming entangled in

24   "abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), abrogated on other

25   grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

26   Ripeness has both constitutional and prudential components.  *Portman*, 995 F.2d at 902.

27   _____

28   [6] This standing defect also highlights Defendants' sovereign immunity.  An injury must be fairly traceable "to the challenged action of the defendant."  Plaintiffs challenge the bill provisions themselves, not the action of any Defendant.  *Friends of the Earth*, 528 U.S. at 180.

1   The constitutional component of ripeness overlaps with the "injury in fact" analysis for Article III

2   standing.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000)

3   (en banc).  But whether framed as an issue of standing or ripeness, the inquiry is largely the same:

4   Are the issues presented "definite and concrete, not hypothetical or abstract"?  *Id.* at 1139.

5          Prudential ripeness is "a tool that courts may use to enhance the accuracy of their decisions

6   and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary."

7   *Simmonds v I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003).  "In evaluating the prudential aspects of

8   ripeness, [the court's] analysis is guided by two overarching considerations: '[1] the fitness of the

9   issues for judicial decision and [2] the hardship to the parties of withholding court

10  consideration.'"  *Thomas*, 220 F.3d at 1141 (quoting *Abbott Labs*, 387 U.S. at 149).

11         Plaintiffs' Due Process Clause and Takings Clause claims lack both constitutional and

12  prudential ripeness.  As discussed above with respect to standing, the impact (if any) of AB

13  1054's evidentiary burden at PUC hearings is currently hypothetical and abstract.  The

14  constitutionality of that provision is not "fit" for determination without an actual PUC rate order

15  following a hearing about a specific wildfire and specific conduct by Plaintiffs' electric utility.

16  *See Thomas*, 220 F.3d at 1141.  Absent such facts, a decision by this Court would be

17  "impermissibly speculative."  *See id.*[7]  Further, the Court's withholding of consideration unless

18  and until Plaintiffs' utility rates have actually increased would not create any hardship.

19         Plaintiffs' constitutional claims are therefore barred by the doctrine of ripeness.

20     **D.     Even If All Article III Requirements Were Met, Plaintiffs' Claims Would**
               **Be Barred by the Johnson Act**
21
       Even if Plaintiffs' federal constitutional claims were otherwise justiciable (and they are
22
   not), they are still barred by the Johnson Act (28 U.S.C. § 1342), which "precludes federal court
23
   jurisdiction over all suits affecting state-approved utility rates, including actions seeking
24
   declaratory relief and compensatory damages."  *Brooks v. Sulphur Springs Valley Elec. Co-op*,
25
   951 F.2d 1050, 1054 (9th Cir. 1991).
26

27         [7] Ripeness concerns are particularly acute in facial constitutional challenges, which
   generally are "disfavored" because they "often rest on speculation" and present issues based on
28  "factually barebones records."  *See Wash. State Grange*, 552 U.S. at 450.

13

1    Under the Johnson Act, "[t]he district courts shall not enjoin, suspend or restrain the

2  operation of, or compliance with, any order affecting rates chargeable by a public utility and

3  made by a State administrative agency or ratemaking body of a State political subdivision, where:

4       (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the
             order to the Federal Constitution; and,
5       (2) The order does not interfere with interstate commerce; and,
6       (3) The order has been made after reasonable notice and hearing; and,
        (4) A plain, speedy and efficient remedy may be had in the courts of such State."
7

8  28 U.S.C. § 1342.

9    Congress passed the Johnson Act to "channel normal rate litigation into the state courts."

10  *Peoples Nat'l Util. Co. v. City of Houston*, 837 F.2d 1366, 1367 (5th Cir. 1988) (quotation

11  omitted); *see also Brooks*, 951 F.2d at 1054.  Accordingly, courts have interpreted the Act

12  broadly to keep challenges to the states' utility ratemaking authority out of federal court.  *See*

13  *Stanislaus Food Prods. Co. v. Pub. Utils. Comm'n*, 560 F. Supp. 114, 118 (N.D. Cal. 1982);

14  *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, 696 F. Supp. 2d 396, 400 (S.D.N.Y. 2010).

15    The Complaint alleges that AB 1054 violates the Due Process and Takings Clauses by, in

16  some circumstances, placing the evidentiary burden on ratepayers in PUC catastrophic wildfire

17  hearings and by directing the PUC to initiate rulemaking procedures to consider imposing a just

18  and reasonable ratepayer charge to support the Fund.  Compl., pp. 39-45.  As noted above, these

19  challenges are not ripe—PUC has yet to issue a rate order resulting from its administration of AB

20  1054.  But even if Plaintiffs' claims were ripe, the Johnson Act would prevent this Court from

21  granting any relief, because the Court may not enjoin the operation of a PUC rate order.  *See*

22  *Citizens Oversight, Inc. v. Cal. Pub. Util. Comm'n*, No. 14-cv-02703-CAB-NLS, 2015 WL

23  13649247, at *4 (S.D. Cal. Apr. 16, 2015) (order need not directly affect rates to invoke the bar to

24  federal jurisdiction under the Act) (*citing Hill v. Kan. Gas Serv. Co.*, 323 F.3d 858, 864 (10th Cir.

25  2003)).

26    Plaintiffs' challenge satisfies all four requirements necessary to invoke the Johnson Act's

27  jurisdictional bar.  *See Brooks*, 951 F.2d at 1054; 28 U.S.C. § 1342.  First, Plaintiffs'

28  constitutional challenges satisfy the Act's requirement that federal jurisdiction be based on

14

1    alleged "repugnance of the order to the Federal Constitution."  28 U.S.C. § 1342(1).  Plaintiffs

2    have not alleged any alternative basis for federal jurisdiction in this matter.

3           Second, any PUC ratesetting order made pursuant to AB 1054 would not "interfere with

4    interstate commerce."  28 U.S.C. § 1342(2).  Here, any PUC order would change utility rates only

5    for California customers.  Pub. Util. Code § 3289(a)(1); *see U.S. West, Inc. v. Nelson*, 146 F.3d

6    718, 724 (9th Cir. 1998) (regarding state agency orders setting intrastate telephone rates).

7           Third, any PUC order affecting rates under AB 1054 would be made after reasonable notice

8    and hearing.  28 U.S.C. § 1342(3).  The PUC can issue an order resulting in a ratepayer charge

9    only after (a) completing the rulemaking procedures required by Public Utility Code section 3289

10   or (b) completing a catastrophic wildfire proceeding, which requires an administrative law judge

11   and prehearing conference.  Pub. Util. Code § 1701.8(b).  Any interested party, including

12   ratepayers, may seek to intervene in a PUC proceeding.  20 Cal. Code Regs. § 1.4.

13          Finally, a "plain, speedy and efficient remedy" regarding rates may be obtained in state

14   court.  Here, state law allows a party aggrieved by a ratemaking decision to file a writ of review

15   in the state court of appeal or Supreme Court within 30 days after a PUC decision denying

16   application for a rehearing.  Pub. Util. Code § 1756(a).  This remedy and well-developed process

17   satisfies the "minimum procedural requirements" to qualify as "plain, speedy, and efficient."

18   *Brooks*, 951 F.2d at 1055.  *Citizens Oversight, Inc*., 2015 WL 13649247 at *6, *quoting S. Cal.*

19   *Edison Co. v. CPUC*, 140 Cal. App. 4th 1085, 1096 (2006).  For these reasons, Plaintiffs' federal

20   constitutional claims are barred under the Johnson Act and should be dismissed.

21   **II.     PLAINTIFFS FAIL TO STATE ANY CLAIMS FOR RELIEF**

22          **A.     Plaintiffs' First Claim for Violation of Due Process Fails to State a Claim
                   Under Either the U.S. or California Constitutions**
23

24          Plaintiffs allege that AB 1054 violates due process in two ways:  first, by "impermissibly

25   shift[ing] the burden to ratepayers to show prudency by the utilities when their operations cause

26   wildfires[;]" and, second, by failing to "provide[] a forum to challenge the extended surcharge in

27   a CPUC proceeding."  Compl., ¶ 121.  Plaintiffs fail to state a claim under either theory.

28

15

1.      **The Evidentiary Burden in PUC Catastrophic Wildfire Proceedings Does Not Violate Due Process Under the U.S. Constitution**

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[8] *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)."  To prevail on their claim that AB 1054 violates due process on its face, Plaintiffs must show that in *every* catastrophic wildfire proceeding, application of the evidentiary burden will deprive Plaintiffs of property and deny them adequate procedural protections.  *See Salerno*, 481 U.S. at 745.  The Complaint does allege either required element.

First and foremost, Plaintiffs fail to allege that the evidentiary burden in Public Utilities Code section 451.1 for PUC catastrophic wildfire proceedings will ever cause a deprivation of property or liberty, much less that it always will.  Plaintiffs allege only that they will be deprived of "a fair opportunity for utility customers to repel the presumption of utility prudence."  *See* Compl., ¶ 125.  Plaintiffs do not explain why this is so.  Regardless, Plaintiffs' professed "interest" in a particular burden of proof is not a cognizable property or liberty interest.  *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 (2005) ("an indirect and incidental result of the Government's enforcement action . . . does not amount to a deprivation of any interest in life, liberty, or property"); *Brewster*, 149 F.3d at 982 ("[i]n order to possess a property interest in a benefit, an individual must have more than an abstract need or desire for it or a unilateral expectation of it").  Because Plaintiffs allege no deprivation of any property or liberty interest, they have failed to meet the first essential element for a due process claim, and the claim therefore fails as a matter of law.

Even if Plaintiffs had alleged that the evidentiary burden in section 451.1 causes a deprivation of property or liberty in every proceeding (which they have not), their due process

---

[8] On its face, the Complaint alleges violations of procedural due process only.  To the extent that Plaintiffs intended to allege a violation of substantive due process, that claim would fail because there are no allegations of a deprivation of any fundamental rights that "shocks the conscience" (*see Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)) and the statute bears a rational relationship to a legitimate state interest (*see Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

16

1    claim would still fail as a matter of law because application of the evidentiary burden does not

2    deny Plaintiffs adequate procedural protections, the second element of a due process claim.

3    Adequate procedural protections require "an opportunity to be heard at a meaningful time and in a

4    meaningful manner." *Brewster*, 149 F.3d at 984.  This analysis involves three factors:

5          [(1)] the private interest that will be affected by the official action; [(2)] the risk of an

6          erroneous deprivation of such interest through the procedures used, and the probable
           value, if any, of additional or substitute procedural safeguards; and [(3)] the

7          Government's interest, including the function involved and the fiscal and
           administrative burdens that the additional or substitute procedural requirement would

8          entail.

9    *City of Los Angeles v. David*, 538 U.S. 715, 716 (2003).  As a matter of law, Plaintiffs'

10   allegations are insufficient under these factors.

11         First, the burden in Public Utilities Code section 451.1 does not deprive Plaintiffs of any

12   actual and concrete property or liberty interest, but rather could only affect Plaintiffs' general

13   economic interests in low utility rates indirectly and speculatively.

14         Second, the procedures for catastrophic wildfire proceedings minimize the risk that electric

15   utilities' conduct will erroneously be deemed "just and reasonable" to support a rate increase.  A

16   utility is relieved of its initial evidentiary burden only if: (a) it possesses a valid safety

17   certification for which it must meet strict requirements; and, (b) and no interested party[9] has

18   raised a serious doubt about the utility's conduct; otherwise, the burden remains on the utility to

19   demonstrate that its conduct was reasonable.  Pub. Util. Code §§ 451.1(b)-(c), 8389(e).

20         Third, the State has an interest in establishing its own evidentiary requirements.  Otherwise,

21   the party bearing the burden could always claim a due process violation.  Moreover, "a state may

22   consider proof of one fact presumptive evidence of another, if there is a rational connection

23   between them [citation], and . . . may change the burden of proof []."  *James-Dickinson Farm*

24   *Mortg. Co. v. Harry*, 273 U.S. 119, 124 (1927).  There is a "rational connection" in presuming

25   that an electric utility acted reasonably if it possessed a valid safety certification.  *See id.*

26         Plaintiffs fail to state a claim that AB 1054, on its face, violates the Due Process Clause of

27   ────────────────

28         [9] Any interested party, including ratepayers like Plaintiffs, may seek to intervene in a PUC
     proceeding and introduce evidence that creates the "serious doubt."  20 Cal. Code Regs. § 1.4.

17

the U.S. Constitution, because they have not alleged either deprivation of any property or liberty interest or inadequate procedural protections in every application of AB 1054.

**2.     The Evidentiary Burden in PUC Catastrophic Wildfire Proceedings Does Not Violate Due Process Under the California Constitution**

The due process analysis under the California Constitution differs from the federal analysis in that the claimant need not establish a property or liberty interest as a prerequisite to invoking due process protection.  *Ryan v. Cal. Interscholastic Fed'n-San Diego Section*, 94 Cal.App.4th 1048, 1069 (2001).  Still, "the claimant must nevertheless identify a statutorily conferred benefit or interest of which he or she has been deprived to trigger procedural due process under the California Constitution."  *Id.* at 1071 (citing *People v. Ramirez*, 29 Cal. 3d 260, 264 (1979)).  Here, Plaintiffs allege only an abstract interest in application of a particular burden of proof in PUC catastrophic wildfire proceedings.  Plaintiffs' professed "interest" notwithstanding, they cannot allege that they have been deprived of any statutorily conferred benefit or interest.

Even if such deprivation had occurred, "[u]nder the California Constitution, the extent to which procedural due process is available depends on a weighing of private and governmental interests involved."  *Oberholzer v. Comm'n on Judicial Performance*, 20 Cal. 4th 371, 390 (1999).  This requires consideration of four factors:

> [(1)] the private interest that will be affected by the individual action; [(2)] the risk of an erroneous deprivation of this interest through the procedures used and the probable value, if any, of additional or substitute safeguards; [(3)]the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible governmental official; and [(4)] the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* at 390-91.  These factors are nearly identical to the federal due process considerations discussed above.[10]  *Compare id.*, *with City of Los Angeles*, 538 U.S. at 716.  And Plaintiffs' claim for violation of the California Constitution's Due Process Clause fails for the same reasons.

---

[10] Only the third factor is different—but as explained above and below, AB 1054's processes provide Plaintiffs ample opportunity to be heard.

18

1

### 3. AB 1054 Expressly Requires the PUC to Assess the Reasonableness of a Proposed Surcharge and Therefore Does Not Violate the Due Process Clause of the U.S. or California Constitutions

2

3    Plaintiffs also allege that AB 1054 violates due process because it fails to "provide[] a

4    forum to challenge the extended surcharge in a CPUC proceeding." Compl., ¶ 121.  Plaintiffs are

5    incorrect.  AB 1054 does not itself impose any surcharge.  Rather, such surcharge may be

6    imposed (if at all) only after PUC proceedings.  Indeed, AB 1054 expressly requires that the PUC

7    initiate a rulemaking proceeding to consider using its authority to require each electric utility that

8    chooses to participate in the Wildfire Fund to collect a charge from ratepayers in support of the

9    Fund.  Pub. Util. Code § 3289.  "*If* the commission determines that the imposition of the charge

10   . . . is just and reasonable, and that it is appropriate to exercise its authority . . . to do so, the

11   commission shall direct each electrical corporation to impose and collect that charge[.]"  *Id.*

12   (emphasis added).  Thus, Plaintiffs' claim that AB 1054 violates due process by failing to provide

13   a PUC proceeding to challenge a contemplated surcharge is baseless.

14   ### B. Plaintiffs' Second Claim for Violation of the Takings Clause Fails to State a Claim

15

16   Plaintiffs next allege that the evidentiary burden in catastrophic wildfire proceedings

17   constitutes an unconstitutional taking by creating the possibility that the PUC may adopt unjust

18   rates.  This claim is patently unripe because Plaintiffs do not allege that any property has been

19   taken from them; they simply allege that it is possible, in the future, that the evidentiary standards

20   could lead to the approval of rate increases that PUC would not otherwise have approved.  "Given

21   the 'essentially ad hoc, factual inquir[y]' involved in the takings analysis," the Supreme Court has

22   "found it particularly important in takings cases to adhere to its admonition that 'the

23   constitutionality of statutes ought not be decided except in an actual factual setting that makes

24   such a decision necessary.'"  *Pennell v. City of San Jose*, 485 U.S. 1, 10 (1988).  The Court need

25   not—and should not—consider Plaintiffs' takings claim in a facial challenge.  *See id.* at 9-10

26   (declining to consider takings claim where there was no evidence that challenged rent control

27   standard "has in fact ever been relied upon by a hearing officer to reduce a rent below the figure it

28   would have been set at on the basis of . . . other factors").

Plaintiffs' takings claim also fails on the merits.  The Takings Clause of the Fifth Amendment provides "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.[11]  Thus, "in order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a property interest that is constitutionally protected." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).  The Takings Clause prohibits two types of "takings":  "physical" takings and "regulatory" takings."  *Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1198 (E.D. Cal. 2018) (*citing Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)).  A physical taking occurs when the government physically invades or takes title to property, while a regulatory taking "occurs where a regulation of private property is so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.*  This case presents neither circumstance.

Plaintiffs do not allege that any of their property has been subject to either a physical or regulatory taking by the government, nor that any such taking is "certainly impending."  First, AB 1054 does not authorize any taking of Plaintiffs' physical property.  Second, "[t]he Constitution within broad limits leaves the States free to decide what ratesetting methodology best meets their needs in balancing the interests of the utility and the public."  *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 316 (1989).  Thus, AB 1054's establishment of a different burden of proof does not, on its face, constitute a taking.  Third, a hypothetical future order by the PUC permitting utilities to increase rates would not constitute a regulatory taking (or any taking "for public use").  It would merely authorize a private company to charge its customers a certain amount in exchange for its services.[12]  Finally, even if a future PUC rate order could constitute a taking of Plaintiffs' property, Plaintiffs certainly cannot show that in *every* application of AB 1054 (i.e., every catastrophic wildfire proceeding) the evidentiary burden would cause such loss.

---

[11] Aside from the California Constitution's additional protection against "damage" to property—a distinction that is not relevant here—California courts interpret the state takings clause as congruent with its federal counterpart.  Cal Const. Art. I, § 19; *San Remo Hotel L.P. v. City & County of San Francisco*, 27 Cal. 4th 643, 663-64 (2002).

[12] To be sure, rate orders may constitute a "taking" of a *utility's* property when they set rates that are "so 'unjust' as to be confiscatory."  *Duquesne Light Co.*, 488 U.S. at 307.  But Plaintiffs would have this Court turn traditional regulatory takings jurisprudence on its head to hold that any rate increase approved by a governmental agency amounts to a "taking" of a *ratepayer's* property.  This novel theory, if accepted, would end ratemaking as we know it.

20

1  Plaintiffs' second claim for violation of the Takings Clauses should be dismissed.

2  **C.   Plaintiffs' Third Claim for Violation of the Urgency Clause of the**
   **California Constitution Fails to State a Claim**

3

4  The California Constitution imposes certain limits on legislation passed as an urgency

5  statute.  Specifically, Article IV, section 8 provides:

6      Urgency statutes are those necessary for immediate preservation of the public
       peace, health, or safety.  A statement of facts constituting the necessity shall be
7      set forth in one section of the bill. . . . An urgency statute may not create or
       abolish any office or change the salary, term, or duties of any office, or grant
8      any franchise or special privilege, or create any vested right or interest.

9  Cal. Const. art. IV, § 8, subd. (d).  Plaintiffs allege that AB 1054 violates Article IV, section 8 in

10 two ways:  first, by failing to make sufficient factual findings stating why AB 1054 is necessary

11 for the 'immediate preservation' of either 'public peace, health, or safety'"; and, second, by

12 establishing the Advisory Board and Wildfire Fund Administrator, which Plaintiffs contend are

13 "offices."  Compl., ¶¶ 147-152).  As explained below, neither of these complaints state a claim,

14 because AB 1054 includes sufficient findings of necessity and created no offices.

15     **1.   AB 1054 Includes the Legislature's Constitutionally Sufficient**
              **Statement of Facts Concerning the Necessity of the Bill**
16

17 The California Supreme Court has long held that "[a]uthority is conferred upon the

18 Legislature to determine when urgency measures are necessary, and when such necessity has

19 been determined as provided by the Constitution, *the judgment of the Legislature is final*, and will

20 not be interfered with by the courts unless no declaration of facts constituting such emergency is

21 included in the act or unless the statement of facts is so clearly insufficient as to leave no

22 reasonable doubt that the urgency does not exist."  *In re Livingston*, 10 Cal. 2d 730, 740 (1938)

23 (emphasis added).  Thus, the Legislature's finding of urgency will not be invalidated "unless it

24 appears clearly and affirmatively from the [L]egislature's statement of facts that a public

25 necessity does not exist."  *Davis v. Los Angeles County*, 12 Cal. 2d 412, 422 (1938); *see also*

26 *Amwest Surety Ins. Co. v. Wilson*, 11 Cal. 4th 1243, 1253-54 (1995).  "If there is any doubt as to

27 whether the facts do or do not state a case of immediate necessity, that doubt should be resolved

28 in favor of the legislative declaration."  *Davis*, 12 Cal. 2d at 422-23.

21

1    Here, as Plaintiffs' acknowledge, the Legislature stated in Section 27 of AB 1054 that it

2    was necessary for the legislation to take effect immediately "[i]n order to address wildfire safety

3    and wildfire liability of electrical utilities and ensure that the claims of wildfire victims may be

4    paid expeditiously[.]" Compl., ¶ 150.  The Legislature also stated in AB 1054 that the electric

5    industry's "unprecedented state of instability" jeopardized the ability of electric companies to,

6    among other things, "provide safe and reliable electric and gas service [and] to reduce the risk of

7    future catastrophes."  Pub. Util. Code § 854.2(a)(6).  Numerous additional findings related to the

8    "immediate threat" of wildfires are set forth sections 1 and 2 of AB 1054.  These statements

9    establish the factual basis for the necessity of immediate action for the preservation of the public

10   peace, health, or safety.  Specifically, they establish that the legislation was urgently needed to

11   protect California utility customers and wildfire victims at a time when catastrophic wildfires

12   threatened the financial solvency of the state's electricity providers.  Plaintiffs may disagree with

13   these findings, but they plainly are not "so clearly insufficient as to leave no reasonable doubt that

14   the urgency does not exist."  *See In re Livingston*, 10 Cal. 2d at 740.  And, the findings certainly

15   do not "clearly and affirmatively" demonstrate public necessity does *not* exist.  *Davis*, 12 Cal. 2d

16   at 422.  Thus, AB 1054's statement of facts is sufficient under Article IV, section 8.

17          **2.      AB 1054 Did Not Create Any "Offices"**

18          The California Constitution also prohibits the creation of any "office" by urgency statute.

19   Cal. Const. art. IV, § 8, subd. (d).  Plaintiffs contend that AB 1054 violates this provision by

20   establishing the Advisory Board and Wildfire Fund Administrator.  Compl., ¶ 148.

21          This claim fails because AB 1054 did not create those positions.  As previously noted, the

22   provision of AB 1054 creating the Advisory Board (Pub. Util. Code section 326.1) was

23   immediately repealed and replaced by AB 111, which was enacted through the normal legislative

24   process.  AB 111, §§ 8, 10.  With respect to the Wildfire Fund Administrator, AB 1054 did not

25   create that position.  *See* AB 1054, § 16, Pub. Util. Code § 3280(a).  The position was created in

26   AB 111 and codified in Government Code section 8899.72.  *See* AB 111, § 1.

27          Thus, the Advisory Board and Wildfire Fund Administrator were validly created by

28   regularly enacted, non-urgency statutes in AB 111, not by urgency statutes in AB 1054.

22

1    Plaintiffs' claim for violation of the "Urgency Clause" should be dismissed.

2        **D.    Plaintiffs' Fourth Claim for Violation of the "Right to Access Information"
             Under the California Constitution Fails to State a Claim**

3

4        In their fourth claim for relief, Plaintiffs allege that AB 1054 limits the public's right to

5    access public records in violation of Article I, Section 3 of the California Constitution because it

6    provides that the PUC and the Advisory Board may assert the deliberative process privilege for

7    communications between them.  Compl., ¶¶ 162, 163.  AB 1054 added a subdivision (f)(1) to

8    Public Utilities Code section 326.1, which stated, "[t]he commission or board may assert the

9    deliberative process privilege for a communication between the board and the commission that

10   satisfies the criteria for privilege as a deliberative process communication."  But this provision

11   was immediately repealed by the Legislature in AB 111 and is no longer law.  *Compare* AB 1054,

12   § 4, *with* AB 111, §§ 8, 10 *and* Pub. Util. Code § 326.1(f).  Because Plaintiffs' fourth claim

13   challenges a provision that is no longer law, it must be dismissed.

14       **E.    Plaintiffs' Fifth Claim Alleging an "Unlawful Gift of Public Funds" Under
             the California Constitution Fails to State a Claim**

15       Plaintiffs allege in their fifth claim that AB 1054 violates the prohibition in the California

16   Constitution against unlawful gifts of public funds.

17       Article XVI, section 6 of the California Constitution provides that the Legislature shall not

18   have "power to make any gift or authorize the making of any gift, of any public money or thing of

19   value to any individual, municipal or other corporation whatever."  A state's expenditure of funds

20   is not a "gift" under Article XVI, section 6 if the expenditure "serves a public purpose."  *County*

21   *of Alameda v. Carleson*, 5 Cal. 3d 730, 745-46 (1971).  This is because the benefit to the state

22   effectively constitutes "consideration" for the expenditure even though private persons also

23   benefit.  *Id.*  "The determination of what constitutes a public purpose is primarily a matter for the

24   Legislature, and its discretion will not be disturbed by the courts so long as that determination has

25   a reasonable basis."  *Id.* at 746; *White v. State*, 88 Cal. App. 4th 298, 311 (2001).  "Accordingly, a

26   wide variety of welfare and other social programs have been upheld."  *County of Alameda*, 5 Cal.

27   3d at 746 (collecting cases).  A Court may properly find at the pleadings stage that there is a

28   reasonable basis supporting the Legislature's determination of a public purpose.  *See, e.g., Cal.*

                                            23

1   *Hous. Fin. Agency v. Elliott*, 17 Cal. 3d 575, 586 (1976); *White*, 88 Cal. App. 4th at 313.

2       Plaintiffs allege that the following constitute "unlawful gifts of public funds" because they

3   may ultimately benefit electric utilities who become eligible to pay certain wildfire claims

4   through the Fund (*see* Pub. Util. Code § 3288(b)); 2)

5   the ratepayer charge that PUC may or may not approve (*see id.* § 3289); and, 3) proceeds from

6   bonds issued by DWR (*see* Water Code § 800550).  Compl., p. 51.

7       AB 1054 includes findings showing that the Legislature has more than a reasonable basis to

8   determine that the Fund (and its funding mechanism) has a public purpose.  The bill expressly

9   states that the Fund's purposes include to:

10  • "reduce the costs to [utility] rate payers in addressing utility-caused catastrophic wildfires";

11  • "support[] the credit worthiness of electrical corporations, and provide[] a mechanism to

12      attract capital for investment in safe, clean, and reliable power for California at a

13      reasonable cost to ratepayers";

14  • "provide a mechanism that allows electrical corporations that are safe actors to guard

15      against impairment of their ability to provide safe and reliable service because of the

16      financial effects of wildfires in their service territories"; and,

17  • ensure that "electrical corporations are operating in a safe manner and have access to

18      capital at reasonable cost to make safety investments."

19  AB 1054.  §§ 1 (a), (b), 2 (c); *see generally* AB 1054, § 1-2.  These are all undoubtedly public

20  purposes, particularly against the factual backdrop of "increased risk of catastrophic wildfires" in

21  the state (*id.*, § 1(a)), the pending bankruptcy of PG&E (*id.*, § 1(a)), and the credit ratings of all

22  other utilities being at or near junk bond status (*id.*, § 12, Pub. Util. Code § 854.2(a)(6)).  Where,

23  as here, the Legislature has included specific, reasonable findings of public purpose in the

24  legislation itself, there is no unlawful gift under Article XVI, section 6 of the California

25  Constitution, and such a claim should be dismissed.  *See County of Alameda*, 5 Cal. 3d at 745-46.

26  **F.    Plaintiffs' Sixth Claim for Declaratory Relief Fails to State a Claim**

27      Finally, the Court should dismiss Plaintiffs' sixth claim, in which they seek declaratory

28  judgment that "AB 1054 is invalid as violative of the U.S. and California Constitutions."  Compl.,

24

1    p. 52.  A lawsuit seeking declaratory relief must first present an "actual case or controversy"

2    within the meaning of Article III of the U.S. Constitution.  *Gov't Emps. Ins. Co. v. Dizol*, 133

3    F.3d 1220, 1222 (9th Cir. 1998).  An "actual controversy" requires "an actual dispute between

4    adverse litigants and a substantial likelihood that a favorable federal court decision will have

5    some effect."  *Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*, 276 F.

6    Supp. 2d 1046, 1050 (E.D. Cal. 2003).  "The disagreement must not be nebulous or contingent

7    but must have taken on fixed and final shape so that a court can see what legal issues it is

8    deciding."

9         Here, no actual case or controversy exists.  As explained in previous sections, the Due

10   Process Clause and Takings Clause claims (Plaintiffs' only federal claims) involve only

11   hypothetical and speculative facts.  *See, e.g.*, *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S.

12   237, 244 (1952) ("[actual controversy] must not be nebulous or contingent but must have taken

13   on fixed and final shape so that a court can see what legal issues it is deciding"); *Ashcroft v.*

14   *Mattis*, 431 U.S. 171, 172 (1977) (declaratory relief claim must not call for an "advisory opinion

15   upon a hypothetical basis, but for an adjudication of present right upon established facts").

16        Even if an actual controversy were present, the Court should decline to exercise its

17   discretion to take jurisdiction to resolve it.  *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44

18   (9th Cir. 1994); *see also* 28 U.S.C. § 2201(a) (a court "*may* declare the rights . . . of any interested

19   party") (emphasis added).  This exercise of discretion is guided by the factors set forth in

20   *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1952).  *Principal Life Ins. Co. v. Robinson*,

21   394 F.3d 665, 672 (9th Cir. 2005).  One of the primary *Brillhart* factors states that "[t]he district

22   court should avoid needless determination of state law issues."  *Id.*  Yet here, Plaintiffs ask the

23   Court to do just that—interpret (and strike down) a state law relating to critical public policy

24   issues for the State of California before the law has even been implemented.

25                                        **CONCLUSION**

26        For the reasons above, Plaintiffs' Complaint, and all claims therein, should be dismissed

27   without leave to amend.

28

25

1    Dated:  September 26, 2019                    Respectfully Submitted,

2                                                 XAVIER BECERRA
                                                  Attorney General of California
3                                                 BENJAMIN M. GLICKMAN
                                                  Supervising Deputy Attorney General
4                                                 ANTHONY O'BRIEN
                                                  NATASHA SAGGAR SHETH
5                                                 Deputy Attorneys General

6

7
                                                  */s/ Gabrielle D. Boutin*
8                                                 GABRIELLE D. BOUTIN
                                                  Deputy Attorney General
9                                                 *Attorneys for Attorneys for California*
                                                  *Department of Water Resources and its*
10                                                *Director, Karla Nemeth, in her official*
                                                  *capacity; the California Department of*
11                                                *Finance and its Director, Keely Bosler, in*
                                                  *her official capacity; California State*
12                                                *Controller Betty Yee, in her official*
                                                  *capacity; and California State Treasurer*
13                                                *Fiona Ma, in her official capacity*

14   SA2019103815
     14146991.docx
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Cannara, Alex, et al v.**          No.   **3:19-cv-04171**
             **California Department of**
             **Water Resources Director**
             **Karla Nemeth, et al.**

I hereby certify that on <u>September 26, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT STATE AGENCIES' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 26, 2019</u>, at Sacramento, California.

|                          |                          |
| :----------------------: | :----------------------: |
| Tracie L. Campbell       | */s/ Tracie Campbell*    |
| Declarant                | Signature                |

SA2019103815
14147286.docx