XAVIER BECERRA
Attorney General of California
BENJAMIN M. GLICKMAN, SBN 247907
Supervising Deputy Attorney General
ANTHONY O'BRIEN, SBN 232650
NATASHA SAGGAR SHETH, SBN 282896
GABRIELLE D. BOUTIN, SBN 267308
Deputy Attorneys General
State Bar No. 267308
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6053
 Fax: (916) 324-8835
 E-mail: Gabrielle.Boutin@doj.ca.gov
*Attorneys for Defendants Governor Gavin Newsom, Karla Nemeth, Keely Bosler, State Controller Betty Lee, State Treasurer Fiona Ma, Insurance Commissioner Ricardo Lara, California Natural Resources Agency Secretary Wade Crowfoot, and Richard Gordon, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX CANNARA, an individual; GENE A. NELSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR GAVIN NEWSOM IN HIS CAPACITY AS THE WILDFIRE FUND ADMINISTRATOR AND AS A MEMBER OF THE CALIFORNIA CATASTROPHE RESPONSE COUNCIL, et al.,<br><br>Defendants. | 3:19-cv-04171 JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: February 13, 2020<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: The Honorable James Donato<br>Trial Date: None set<br>Action Filed: July 19, 2019 |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("FRCP"), the Clerk's Notice dated October 25, 2019 (ECF No. 38), and the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, Plaintiffs Alex Cannara and Gene A. Nelson ("Plaintiffs") and Defendants Governor Gavin Newsom, Karla Nemeth, Keely Bosler, State Controller Betty Lee, State Treasurer Fiona Ma, Insurance Commissioner Ricardo Lara, California Natural Resources Agency Secretary Wade Crowfoot, Richard Gordon, and California Public Utilities Commissioners ("CPUC") Marybel Batjer, Liane Randolph, Martha Guzman Aceves, Genevieve Shiroma, and Clifford Rechtschaffen, all in their official capacities ("Defendants"), submit this Joint Case Management Statement. Counsel participated in a conference on September 26, 2019 pursuant to Rule 26(f) of the FRCP. The CPUC Defendants and the remaining Defendants identified above are represented by two separate sets of counsel in this action.

**1.   Jurisdiction and Service**

Plaintiffs:

The First Amended Complaint ("FAC") has been served on all named defendants except Rhoda Rossman, Paul Rosenstiel and Catherine Bando, each a voting member of the California Catastrophe Response Council. Although service has been attempted, there appears to be an evasion and accordingly, Plaintiffs are looking to effect substitute service or have existing government counsel accept service on their behalf.

Defendants:

As Defendants argue in their motions to dismiss the FAC, filed on December 20, 2019 (ECF Nos. 48, 49), and set for hearing on February 13, 2020, this Court lacks subject matter jurisdiction on the grounds that Defendants have Eleventh Amendment sovereign immunity, Plaintiffs lack standing, the case is unripe, and the federal Johnson Act (28 U.S.C. § 1342) bars the Court from exercising jurisdiction here.

**2.   Facts**

Plaintiffs:

In this case, Plaintiffs have alleged the following claims against defendants:

Plaintiffs, electric and gas ratepayers of Pacific Gas & Electric Company (PG&E), bring claims to seek redress wherein under the complained-of law (Assembly Bill 1054), they are being forced to subsidize the Investor Owned Utilities (IOUs) through payment of increased rates ($13.5 billion) and moreover, would have their rights under the U.S. and California Constitutions, such as their due process rights and rights to be free from an unlawful government taking, violated by enforcement of the complained-of act of the Legislature.

Assembly Bill (AB) 1054, a 57-paged bill signed into law by Governor Gavin Newsom within two weeks of its introduction on 12 July 2019, became a bailout of the IOUs, both financially and legally. Under AB 1054, electric utility customers and California taxpayers will continuously subsidize the IOUs' liabilities from causing catastrophic wildfires. The statute authorizes the California Department of Water Resources (DWR) to issue as many bonds as necessary to capitalize a fund to pay IOU liabilities—an unlawful gift of public funds to the IOUs—while the California Public Utilities Commission (CPUC) is empowered to order any electricity rate increases necessary for the bonds to be paid off.

AB 1054 authorized the California Public Utilities Commission (CPUC) to force utility customers to pay over $13.5 billion over the next 15 years to pay for fires that PG&E and other utilities caused. In AB 1054, the Legislature authorized the CPUC to impose on utility customers a non-bypassable charge. The CPUC did not provide a fair notice and hearing to the utility customers before imposing the new $13.5 billion charge. Utility customers were not allowed to gather evidence, there was no hearing, and no cross-examination. The CPUC decision was not supported by evidence but rather by conclusions and argument.

In other words, IOU customers can now be made responsible for paying back potentially limitless IOU wildfire liabilities without due process, while IOUs continue to reap a guaranteed profit for their shareholders and investors. The utilities have placed the burden of their wildfires squarely on the backs of poor and working-class families through increased electricity rates and

taxes. AB 1054 redefined both the burden of proof and the legal standard by which an electric utility could be found imprudent, placing that burden on ratepayers. Meanwhile, a utility can now show it acted prudently by comparing its actions against those of other electric utilities, even if it violated objective standards of utility behavior, such as California's wildfire safety rules. As a practical matter, it is now nearly impossible for utility customers to prevent an IOU from passing uninsured wildfire liabilities onto them.

AB 1054 dismantles long-standing legal incentives against utility imprudence, despite both federal and state investigations revealing the IOUs' cavalier attitudes towards safety to be the root cause of many devastating wildfires. One of California's largest IOUs—Pacific Gas & Electric Company (PG&E)—is in fact a convicted felon for its criminally negligent maintenance of its gas pipelines, which led to a gas pipeline explosion in San Bruno. PG&E declared bankruptcy six months ago because of its many billions in wildfire-related liabilities, yet exhaustive investigations by at least two separate media outlets revealed PG&E spent millions lobbying the California Legislature in the last year and issued billions in dividends to its shareholders.

Given the IOUs' recent history of disaster after disaster caused by violations of safety rules, AB 1054's built-in presumption of safe electric utility operation does little more than assist IOUs in passing on costs in the form of unjust and unreasonable rates onto their customers.

To induce the Legislature into passing a 57-page utility bailout plan in the span of two weeks, the IOUs and their institutional investors threatened IOU credit downgrades and bankruptcy. Such threats resemble the tactics used by electric power providers during the California Energy Crisis: Power plant operators would threaten to withhold energy and even turn off their power plants unless the Legislature approved immediate and unprecedented action to authorize purchases of artificially overpriced electricity. Those actions cost the people of California billions which, after almost two decades, Californian taxpayers are still paying off. If implemented, AB 1054 would be a permanent burden to California taxpayers. AB 1054 thus violates the due process rights of electric utility customers, would impose unjust and unreasonable rates upon them amounting to an unconstitutional taking, was improperly

designated as an urgency measure, and would violate the right of the public to access records pertaining to the public's business.

Plaintiffs hereby bring this action to invalidate AB 1054 as violative of the U.S. and California Constitutions, receive a declaration of the bill's invalidity, and enjoin any state officer and agency from implementing the bill's various provisions.

Defendants deny Plaintiffs' allegations and assert all defenses.

<u>Defendants</u>:

In the summer of 2019, the state of California faced an immediate threat to communities and properties throughout the state from the risk of catastrophic utility-related wildfires. The electrical utilities' resulting exposure to financial liability from wildfires caused by utility equipment also increased costs for ratepayers and resulted in unprecedented instability for the utilities. The state's largest electrical utility filed for Chapter 11 bankruptcy protection and others faced credit ratings downgrades to near junk bond status. This instability jeopardized the ability of the state's electric utilities to provide California residents and businesses with safe, reliable, and affordable electric service, to reduce the risk of future catastrophes by maintaining or improving facilities and operations, to meet the state's mandates to reduce carbon emissions, and to address the risks of climate change.

In response to the immediate threat posed by utility-caused catastrophic wildfires, the California Legislature took action to stabilize the situation by enacting Assembly Bill ("AB") 1054 as an urgency measure. Along with detailed provisions to lower the risk of utility-caused wildfires, AB 1054 created the Wildfire Fund ("Fund") to pay the claims of wildfire victims. It is funded, in part, by up to $10.5 billion in initial and annual contributions from electrical utility shareholders. The purpose of the Fund is to protect Californians by ensuring that utility companies that are safe actors will have the financial means to provide essential services at reasonable rates and to reduce costs to ratepayers by paying for liabilities that otherwise would be recovered in rate increases.

The Fund is capitalized through several mechanisms including an electric ratepayer surcharge that AB 1054 permitted the CPUC to approve if the CPUC found the surcharge to be

just and reasonable. Following duly held rulemaking proceedings, the CPUC issued an order approving the surcharge on October 24, 2019. A party to that proceeding has filed an Application for Rehearing at the CPUC, which is currently pending.

This action asserts facial constitutional challenges to AB 1054 and an as-applied constitutional challenge to the CPUC surcharge proceeding.

### 3. Legal Issues

Plaintiffs:

Plaintiffs brought claims as follows: (1) Violation of 14th Amendment Due Process rights; (2) Violations of the 5th Amendment Takings; and (3) Declaratory and Injunctive Relief.

Plaintiffs will contest Defendants' motions to dismiss because (1) they have subject matter jurisdiction because substantial questions of federal law are presented; (2) there is no Eleventh Amendment sovereign immunity as individual State defendants have authority to enforce the provisions of AB 1054 against taxpayers; (3) Plaintiffs have standing as they have alleged, and would suffer, a particularized injury by the imposition of unjust and unreasonable rates that are imminent and traceable to AB 1054; (4) Plaintiffs' claims are ripe because the CPUC has already issued a proposed decision, with a final decision by the end of October 2019, implementing the non-bypassable $13.5 billion charge to ratepayers; and (5) the Johnson Act does not bar Plaintiffs' claims because they were not provided real notice, nor afforded a fair hearing, and there is no speedy or effective relief under State law.

Defendants:

Each set of Defendants has filed a motion to dismiss all claims in the FAC. The motions are set for hearing on February 13, 2020. Defendants argue that the Complaint should be dismissed because the court lacks subject matter jurisdiction and because each claim fails to state a claim upon which relief can be granted. Subject matter jurisdiction is absent because Defendants have Eleventh Amendment sovereign immunity, Plaintiffs lack standing, the case is unripe, and the Johnson Act (28 U.S.C. § 1342) bars the Court from exercising jurisdiction here.

**4.     Motions**

Plaintiffs:

Plaintiffs will duly file oppositions to Defendants' motions for the reasons discussed above and more fully in the prospective filings.

Defendants:

Each set of Defendants has filed a motion to dismiss all claims in the Complaint. The motions are set for hearing on February 13, 2020. If the Court denies those motions in full or in part, Defendants will likely file motions for summary judgment.

**5.     Amendment of Pleadings**

Plaintiffs:

Plaintiffs propose a deadline of amending pleadings that is calculated with reference to an order on Defendants' motions to dismiss and discovery.

Defendants:

Defendants propose a deadline of March 13, 2020, to amend the pleadings.

**6.     Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     Disclosures**

The parties have served initial disclosures pursuant to Rule 26(a).

**8.     Discovery**

Plaintiffs:

Plaintiffs believe they are entitled to discovery as the Complaint is not a simple facial challenge to a statute. The complaint alleges a scheme to force the people of California to continuously subsidize the IOUs' catastrophic wildfires liabilities. This plan was concocted after PG&E, a convicted felon that caused California's deadliest wildfire and is subject to claims arising therefrom, gave more than 3/4 of a million dollars to the Governor and state legislators,

and more in political contributions. In addition, PG&E spent $10 million in lobbying expenses in 2018. There are factual issues as to how this well-coordinated scheme to impose $13.5 billion on customers while weakening the prudency and due process standards culminated in the 57-page plan rushed into law in just two weeks.

The FAC alleges a conspiracy between PG&E and state officials to force utility customers to pay victims of PG&E caused fires, even if PG&E was imprudent. The plot was hatched in a series of meetings between and amongst PG&E executives, state officials, and their hired consultants and advisors. To conceal the unlawful scheme, the perpetrators attributed their plan to a Wildfire Task Force report and a Wildfire Commission Report. Plaintiffs have obtained writing showing the time, place and participants of several of the planning meetings. Plaintiffs seek leave to obtain a discovery repository to store and review the relevant email and other records of communications. Plaintiffs also seek to take depositions of the key perpetrators of the conspiracy.

Defendants:

Defendants do not believe that discovery is necessary or appropriate in this action. As argued in their motions to dismiss, this action is barred because Defendants have Eleventh Amendment sovereign immunity, Plaintiffs lack standing, the case is unripe, and the federal Johnson Act deprives the Court of jurisdiction. In addition, the FAC is a primarily a facial challenge to a statute, which requires no fact-finding. Finally, although the FAC also includes an as-applied challenge to the CPUC's conduct of the surcharge rulemaking proceeding, there are no relevant facts regarding that proceeding that are unknown to or disputed by the parties.

For these reasons, Defendants ask the Court to defer all detailed discussions and orders related to the conduct of discovery until after the motions to dismiss have been decided. If the Court disagrees with Defendants and finds that factual issues exist, discovery should be planned or ordered based only on the factual issues identified by the Court in its ruling.

**9.   Class Actions**

This case is not a class action.

**10.   Related Cases**

Plaintiffs:

*United States of America v. Pacific Gas & Electric Company*, USDC Northern District of California, Case No. CR 14-00175 WHA (PG&E felony probation);

*In Re PG&E Corporation*, US Bankruptcy Court, Northern District of California, Case No. 19-30008 (DM) (bankruptcy proceeding, referenced in AB 1054).

Defendants:

Defendants are not aware of any related cases.

**11.   Relief**

The FAC prays for: (1) "a judgment that the following provisions of Section 6 and 16 of AB 1054 be declared to have been adopted in violation of the United States Constitution," (2) an injunction "enjoining Defendants from enforcing or implementing Section 6 and 16 of AB 1054," and (3) an award of "litigation expenses, attorney fees, and costs." See FAC, ECF No. 46 at 71-72.

**12.   Settlement and ADR**

Prior to reassigning this action, Judge Chen excused the parties from ADR at the October 17, 2019, scheduling conference.

Plaintiffs:

Plaintiffs believe a discussion before a neutral in mediation or settlement conference would be productive.

Defendants:

This case is very unlikely to settle. The FAC seeks to invalidate duly-enacted legislation and Defendants lack authority to agree to a compromise on that issue.

**13.   Consent to Magistrate Judge For All Purposes**

Plaintiffs declined Magistrate jurisdiction on August 2, 2019 (ECF No. 8).

**14.   Other References**

The parties do not currently believe that any other references would be appropriate in this case.

**15.   Narrowing of Issues**

The parties do not believe that there are any issues that can be narrowed by agreement at this time.

**16.   Expedited Trial Procedure**

The parties agree that this case is not suitable for expedited trial procedures.

**17.   Scheduling**

Plaintiffs:

Plaintiffs request that discovery commence immediately.

Defendants:

For the reasons stated above in response to item 8, discovery is unnecessary and inappropriate in this action. Plaintiffs request that the Court wait until after deciding the motions to dismiss before setting any case deadlines.

**18.   Trial**

Plaintiffs:

Plaintiffs request a jury trial with an estimate of 21 days of trial. However, because discovery has not yet been completed, Plaintiffs ask the Court to permit a revised estimate if the discovery proves the estimated length to be insufficient.

Defendants:

This case will be decided and, if necessary, tried by the Court. Plaintiffs are not entitled to a jury trial because they raise purely legal claims and seek only equitable relief. Defendants believe that the case will be decided on their motions to dismiss. If not, Defendants anticipate that they would then file motions for summary judgment. In the event the Court determines that factual issues exist for trial, the nature of those issues would determine Defendants' estimated trial length.

**18.   Disclosure of Non-party Interested Entities or Persons**

Plaintiffs:

Pursuant to Civil L.R. 3-15, Plaintiffs will file a certification that the following listed persons, associations of persons, firms, partnerships, corporations or other entities (i) have a

financial interest in the subject matter or controversy: San Diego Gas & Electric Company, Southern California Edison Company, and Pacific Gas and Electric Company.

Defendants:

As government agencies, Defendants are exempt from filing a Certification of Interested Entities or Persons under Local Rule 3-15. See L.R. 3-15(a). Defendants nevertheless believe that the following entities may be interested in this action: San Diego Gas & Electric Company, Southern California Edison Company, and Pacific Gas and Electric Company.

**19.   Professional Conduct**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   Other Matters**

The parties do not seek to discuss any additional matters at the scheduling conference, but reserve all rights should issues arise during discussions before the Court.

Dated: January 2, 2020                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General
ANTHONY O'BRIEN
NATASHA SAGGAR SHETH
Deputy Attorneys General


*/s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Defendants Governor Gavin Newsom, Karla Nemeth, Keely Bosler, State Controller Betty Lee, State Treasurer Fiona Ma, Insurance Commissioner Ricardo Lara, California Natural Resources Agency Secretary Wade Crowfoot, and Richard Gordon, in their official capacities*

| | | |
|---|---|---|
| 1 | Dated: January 2, 2020 | AGUIRRE & SEVERSON, LLP |
| 2 | | |
| 3 | | |
| 4 | | /s/ *Maria C. Severson*<br>Maria C. Severson<br>*Attorney for Plaintiffs* |
| 5 | | |
| 6 | Dated: January 2, 2020 | AROCLES AGUILAR<br>CHRISTINE J. HAMMOND |
| 7 | | |
| 8 | | |
| 9 | | /s/ *Christofer C. Nolan*<br>CHRISTOFER C. NOLAN<br>*Attorneys for Marybel Batjer, Liane Randolph, Martha Guzman Aceves, Genevieve Shiroma, and Clifford Rechtschaffen, in their official capacities as Commissioners of the California Public Utilities Commission* |

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all signatories above.

Dated: January 2, 2020

/s/ *Gabrielle D. Boutin*
Gabrielle D. Boutin