UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX CANNARA et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARLA NEMETH et al., <br><br> Defendants. | Case No. 19-cv-04171-JD <br><br> **ORDER RE MOTIONS TO DISMISS** <br> Re: Dkt. Nos. 48, 49 |

Plaintiffs Alex Cannara and Gene A. Nelson are California residents and "electric and gas ratepayers of Pacific Gas & Electric Company." Dkt. No. 46 ¶¶ 16-18. In a first amended complaint ("FAC"), they seek declaratory and injunctive relief against a decision by the California Public Utilities Commission ("CPUC") to impose a charge on ratepayers in connection with California Assembly Bill 1054, an "urgency bill" that established a fund of approximately $1 billion to help cover the losses from future wildfires caused by public utilities. The Commission and other defendants ask to dismiss the case under FRCP Rule 12(b)(1) and Rule 12(b)(6) based on, among other grounds, the Johnson Act, 28 U.S.C. § 1342, which bars the district courts from hearing cases challenging an order affecting public utility rates. Dkt. Nos. 48, 49. The FAC is dismissed with prejudice.

**BACKGROUND**

The factual background for the motions to dismiss is not materially disputed. A significant portion of it comes out of the public record before the CPUC. Defendants have asked the Court to take judicial notice of the pertinent CPUC orders. *See* Dkt. Nos. 48-1, 49-1. Plaintiffs opposed judicial notice of certain disputed facts contained in the documents, Dkt. Nos. 52-1, 53-1, but submitted some of the same documents in support of their supplemental briefing on the Johnson

Act, Dkt. No. 65-1. Both sides have relied on the CPUC record, and the Court will consider the CPUC materials for purposes of these motions. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *County of Stanislaus v. PG&E Co.*, No. CV-F-93-5866-OWW, 1995 WL 819150, at *8 (E.D. Cal. Dec. 18, 1995) (court "may properly take judicial notice of public records of the CPUC"), *aff'd*, 114 F.3d 858 (9th Cir. 1997). In addition, the Court may review evidence outside of the complaint to resolve jurisdiction disputes under Rule 12(b)(1). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 951-52 (N.D. Cal. 2018).

The salient facts are straightforward. California enacted AB 1054 in July 2019 in response to several catastrophic wildfires caused by the Pacific Gas & Electric Company ("PG&E") and other public utilities. The fires resulted in over 100 deaths, destroyed homes and other buildings, burned vast tracts of land, and inflicted untold suffering on tens of thousands of California residents. The utilities' financial liability for the fires has been massive. PG&E went into bankruptcy over the liability, and has agreed to pay $13.5 billion to more than 70,000 fire victims, and another $11 billion to the insurance companies that covered some of the victims' claims. *See generally In re PG&E Corporation*, No. 19-cv-05257-JD (N.D. Cal. filed Aug. 22, 2019).

To ensure that utilities have the means to compensate future fire victims, AB 1054 established a Wildfire Fund to pay for claims. Cal. Pub. Util. Code § 3284. A significant portion of the capital for the Wildfire Fund will come directly from the utilities' customers. *Id*. § 3285(c)(3)-(4). To that end, AB 1054 directed the CPUC to "initiate a rulemaking proceeding to consider using its authority" to require participating utilities "to collect a nonbypassable charge from ratepayers of the electrical corporation to support the fund." *Id*. § 3289(a)(1). If the CPUC decided that the nonbypassable charge would be "just and reasonable," it was required to "direct each electrical corporation to impose and collect that charge" from ratepayers like plaintiffs. *Id*. § 3289(a)(2).

AB 1054 directed the CPUC to promptly initiate the rulemaking proceeding. *Id*. § 3289(a)(1). To that end, the CPUC published on July 26, 2019, just two weeks after AB 1054 was enacted, an order instituting a rulemaking proceeding (the "OIR") for the Wildfire Fund

2

nonbypassable charge. Dkt. No. 66-2 Exh. A at 2. It set a prehearing conference for August 8, 2019, to address "the issues, scope, and schedule for this proceeding," and anticipated that a final decision would be published in October 2019. *Id*. at 4. The brisk timeline was in response to AB 1054, which required the CPUC to adopt a decision within 90 days of the OIR. Cal. Pub. Util. Code § 3289(b).

The OIR preliminarily categorized the CPUC proceeding as a "ratesetting" action. Dkt. No. 66-2 Exh. A at 9. The OIR stated that anyone who appeared at the prehearing conference and requested party status would become a party to the proceeding. *Id.* at 8. Ruth Henricks, a California resident and customer of another participating utility, the San Diego Gas & Electric Company, took advantage of this opportunity to appear before the CPUC as a party in opposition to the nonbypassable charge. Dkt. No. 52 at 23-24. She was represented there by plaintiffs' counsel in this case.[1]

After the prehearing conference, the CPUC assigned Commissioner Clifford Rechtschaffen to oversee further proceedings. Commissioner Rechtschaffen issued a "Scoping Memo" on August 14, 2019, that defined the scope of the rulemaking as "the question of whether the Commission should authorize and order the collection of a non-bypassable charge from ratepayers of certain electrical corporations sufficient to provide" the ratepayer contribution to the Wildfire Fund. Dkt. No. 66-2 Exh. B at 4. The Scoping Memo identified a number of subsidiary questions for consideration, including "[w]hether it is just and reasonable for the Commission to impose the Wildfire Fund non-bypassable charge." *Id.* at 8. The memo acknowledged that some comments filed for the prehearing conference voiced concerns about the pace of the proceeding, but concluded that "the process and schedule required, while expedited, meet minimum due process requirements." *Id.* at 9-10. The memo also "ruled" that "[t]he category of the proceeding is ratesetting." *Id*. at 14 (emphasis omitted).

The Scoping Memo assigned the proceeding to a CPUC administrative law judge for the next round of events. *Id*. On September 6, 2019, counsel for plaintiffs filed a motion for oral

---

[1] Henricks is not a plaintiff here. Plaintiffs proposed adding her if there was a "standing" issue, Dkt. No. 52 at 23-24, but have not otherwise moved to make her a party.

3

argument on behalf of Henricks. Dkt. No. 66-2 Exh. C. The ALJ granted the motion. *Id.* Exh. E.

On September 23, 2019, the ALJ issued a 64-page proposed decision finding that it was "appropriate for the Commission to exercise its broad authority to impose a non-bypassable charge on the ratepayers of California's large electrical companies in order to support California's new Wildfire Fund," Dkt. No. 66-2 Exh. D at 2, and that the imposition of the charge "is just and reasonable," *id*. at 59. The ALJ considered the evidence submitted by the parties and responded to a number of comments supporting and opposing the charge. The ALJ expressly noted that Henricks had alleged "various inadequacies with the process," such as insufficient opportunity to comment and the absence of an evidentiary hearing. *Id*. at 40. The ALJ disagreed with the objections, and detailed the substantial volume of comments from a wide array of parties that had been received and reviewed. *Id*. at 41-43. The ALJ also concluded that Henricks and other objectors had failed "to demonstrate that there are <u>any</u> material issues of disputed fact that require evidentiary hearing." *Id*. at 42 (emphasis in original).

The proposed decision had no legal effect until approved by the Commission. Dkt. No. 66-2 at 35. On October 10, 2019, the Commission held oral argument about the proposed decision at which a number of parties were given time to speak. *See id.* Exh. E. Plaintiffs' counsel appeared on behalf of Henricks, and made opening and rebuttal remarks to the Commission, which focused primarily on procedural concerns. *Id.* Exh. F (Hearing Transcript at 6-10, 62-69).

On October 24, 2019, the Commission issued a 64-page decision approving the imposition of the proposed charge on ratepayers. Dkt. No. 66-2 Exh. G. The decision found the charge to be just and reasonable. *Id*. at 33-34. The decision also noted that certain issues, such as the actual amount of the charge, were yet to be determined. See *id*. at 31 ("The Commission keeps the instant proceeding open in order to consider the annual revenue requirement and sales forecast for the Wildfire Fund NBC in 2020."); *id*. at 32 ("For every year after 2020, an annual Wildfire Fund NBC charge determination process shall be considered in future Commission decisions.").

The decision directly addressed, and rejected, comments by Henricks that the proceeding did not comply with due process. The Commission noted that "parties were granted substantial notice of the proceeding and were afforded an opportunity to research and develop positions on

4

scoped issues, prepare and submit opening comments, and then file a second round of responsive comments." *Id*. at 41.  The Commission also observed that the "parties concerned with the expedited process in this proceeding fail to demonstrate that there are any material issues of disputed fact that require evidentiary hearing, despite their claims to the contrary." *Id.* (emphasis in original).  It noted that "few restrictions were placed on the parties' ability to provide comments in a form of their choosing, and the majority of the party comments are substantially similar to legal briefing on issues of AB 1054 interpretation and implementation." *Id*.  For these and similar reasons stated in the decision, the Commission concluded that "due process was provided in this proceeding." *Id*. at 43.

On November 25, 2019, Henricks moved for a rehearing of the decision, once again mainly on the basis of alleged due process issues.  Dkt. No. 66-2 Exh. H.  On March 2, 2020, the Commission denied Henricks's motion in a 14-page order.  *Id.* Exh. I.  The order detailed the evidence in the record demonstrating that the parties had had fair and reasonable notice and opportunity to be heard.  *Id.* at 2-7.  The Commission concluded that the decision not to hold an evidentiary hearing did not violate due process because Henricks's claims related "to the meaning and proper interpretation of AB 1054, and do not raise any issues requiring evidentiary hearings." *Id.* at 7.  It also expressly determined that the proceeding had complied with the notice and hearing standards for ratesetting proceedings under Cal. Pub. Util. Code § 1701.1(b)(1).  *Id.* at 3-4, 7.

Plaintiffs filed this lawsuit just as the events at the CPUC were beginning to unfold.  They sued originally in July 2019, and filed a 72-page FAC in December 2019.  *See* Dkt. Nos. 1, 46.  Plaintiffs allege a first claim under the Due Process Clause of the Fourteenth Amendment, a second claim under the Takings Clause of the Fifth Amendment, and a third claim for declaratory judgment.  Plaintiffs seek an injunction enjoining the imposition of the nonbypassable charge.

Defendants ask to dismiss the FAC under FRCP Rule 12(b)(1) and Rule 12(b)(6).  *See* Dkt. Nos. 48, 49.  They raise a number of arguments, including immunity under the Eleventh Amendment and the Johnson Act.  The Court finds that the Johnson Act bars jurisdiction over this ratesetting dispute, and so does not reach the Eleventh Amendment or other grounds tendered for dismissal.

# DISCUSSION

## I. LEGAL STANDARDS

Well-established standards govern the motions. "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039 (citations omitted); *see also Patel*, 290 F. Supp. 3d at 951-52.

In a facial jurisdictional challenge, the Court takes all factual allegations in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). In a factual challenge, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039 (citations omitted). Defendants' argument that the Johnson Act bars plaintiffs' lawsuit is a factual challenge to the Court's subject matter jurisdiction, and plaintiffs have responded in kind.

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. THE JOHNSON ACT BARS THIS LAWSUIT

Defendants' main argument is that the Johnson Act bars this case from being heard in federal court. *See* Dkt. No. 48 at 9-18; Dkt. No. 49 at 16-18. As the Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or

> repugnance of the order to the Federal Constitution; and
> (2) The order does not interfere with interstate commerce; and
> (3) The order has been made after reasonable notice and hearing; and
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

As this plain language indicates, the Johnson Act is "intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel.'" *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1207 (10th Cir. 1999) (internal quotation omitted); *see also Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1138 (10th Cir. 1974) (the Act effects "a 'general hands-off policy relative to state rate making'") (internal citation omitted). The Johnson Act is "premised on the notion that disputes concerning local utility rates are most appropriately resolved by state administrative agencies." *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1055 (9th Cir. 1991). As a result, it "precludes federal court jurisdiction over all suits affecting state-approved utility rates" so long as the four enumerated requirements are met. *Id*. at 1054; *see also US West, Inc. v. Nelson*, 146 F.3d 718, 721 (9th Cir. 1998) ("The Johnson Act withdraws state utility rate cases from federal jurisdiction" when the statutory conditions are met). The Johnson Act is broadly construed. *Brooks*, 951 F.2d at 1054. As the parties invoking it, defendants bear the burden of showing that the requirements of the Johnson Act have been met. *US West*, 146 F.3d at 722.

There is no question that the FAC is a challenge to an order affecting utility rates. The CPUC repeatedly categorized its deliberations as a ratesetting proceeding, a fact that plaintiffs do not contest. Plaintiffs have sued as PG&E ratepayers and object to the Commission's authorization of the nonbypassable charge because it imposes a "rate increase" on them "to support AB 1054." Dkt. No. 46 ¶¶ 18-19. The claims in the FAC are premised on plaintiffs' "legally protected property interest in being charged just and reasonable electricity rates." *Id.* ¶¶ 208, 228. The alleged harm is that the nonbypassable charge is "a taking of Plaintiffs' property in the form of increased electric utility rates." *Id*. ¶ 229. The requested remedy is an injunction to stop the imposition of the rate increase. A plainer challenge to a state ratesetting order is hard to

imagine.

Consequently, the Johnson Act excludes this case from federal court so long as all of the conditions it requires are met. The determination of whether that is true has been made considerably easier by the fact that plaintiffs in effect contest only the adequacy of the notice and hearing element in Section 1342(3). None of the other conditions are meaningfully disputed.[2]

Although plaintiffs vigorously challenge the procedural adequacy of the CPUC proceeding, as they did before the CPUC, they face a problem that is lethal to their argument. The Johnson Act requires only reasonable notice and hearing. It does not prescribe any specific form of the notice or the hearing. *See Tennyson*, 506 F.2d at 1141 ("The Johnson Act does not engraft its own undefined standards of notice and hearing upon the rate making bodies of the several states but requires no more than that which is appropriate to an 'order affecting rates.'"). To impose anything other than reasonable notice and hearing under the Johnson Act would be antithetical to Congress's purpose of keeping ratesetting decisions in the hands of the states and free of federal judicial intervention.

The record amply demonstrates that the CPUC proceeding satisfied the reasonable notice and hearing element of the Johnson Act. From the very start in the OIR, the CPUC took steps to ensure broad notice to interested parties, Dkt. No. 66-2 Exhs. A (Order Instituting Rulemaking), which resulted in participation by a wide range of entities and individuals, including Henricks. The CPUC provided multiple opportunities for parties to be heard through written comments and in oral arguments. It considered the need to conduct an evidentiary hearing at several points in the proceeding, and determined that the scope of the rulemaking did not call for an evidentiary hearing and that no party had made a good showing to the contrary. *See, e.g.*, *id.* Exh. B at 8, 14; Exh. G at 40-43 and n.88; Exh. I at 2-7. This level of notice and hearing was perfectly reasonable, and the

---

[2] Plaintiffs make a vague effort to say that Section 1342(4)'s requirement is not met because AB 1054 itself does not provide a plain, speedy and efficient state law remedy. Dkt. No. 52 at 11-16; Dkt. No. 53 at 16-17. The point is not well taken. Judicial review of CPUC orders is provided for by California state law. *See* Cal. Pub. Util. Code §§ 1756-1767; *see also* Dkt. No. 48 at 16-18. Such appeals are granted preference, Cal. Pub. Util. Code § 1767, and where constitutional challenges are raised, California state courts are directed to "exercise independent judgment on the law and the facts," *id.* § 1760. Our circuit has held that similar statutes satisfy the Johnson Act. *See US West*, 146 F.3d at 725-26; *Brooks*, 951 F.2d at 1055-56.

Johnson Act requires nothing more.

The Commission's conclusions about the procedural adequacy of the proceeding are equally fatal to plaintiffs' position. In response to Henricks's motion for reconsideration, the Commission determined that "there is no constitutional requirement that the Commission hold an evidentiary hearing in a ratesetting proceeding." *Id.* Exh. I at 3 (citing *Mathews v. Elridge*, 424 U.S. 319, 343 (1976); *Wood v. Public Util. Comm'n*, 4 Cal. 3d 288, 292 (1971)). The Commission also concluded that the proceeding complied with procedures required by California state law. *Id.* (citing Cal. Pub. Util. Code § 1701.1(b)(1)). These adjudicative findings are entitled to a preclusive effect that bars relitigating them here. *See Brooks*, 951 F.2d at 1054-55.

For the sake of a complete record, the Court invited the parties to file supplemental briefs on the notice and hearing issue. Dkt. No. 62. The supplemental materials did not identify any factor that points to a different outcome here. *See* Dkt. Nos. 65, 66.

This is enough to dismiss the case for lack of jurisdiction under the Johnson Act. Plaintiffs' constitutional claims are not dismissed on the merits, and may be pursued as warranted in the California state courts. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 and n.4 (1981) ("If Congress does not confer jurisdiction on federal courts to hear a particular federal claim, the state courts stand ready to vindicate the federal right, subject always to review, of course, in [the United States Supreme] Court.") (internal citation omitted).

Plaintiffs have already amended their complaint once, and further amendment will not be likely to adduce facts that would foreclose application of the Johnson Act. Consequently, the case is dismissed with prejudice. *See US West*, 146 F.3d at 726.

**IT IS SO ORDERED.**

Dated: June 17, 2020

JAMES DONATO
United States District Judge

9